# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-3620

ANDRE JOHNSON,

*Plaintiff-Appellant*,

*v.*

DONALD T. SNYDER, EUGENE MCADORY, Assistant
Warden, PAM GRUBMAN, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 C 137—**Gerald B. Cohen**, *Magistrate Judge.*

ARGUED FEBRUARY 8, 2006—DECIDED APRIL 5, 2006

Before MANION, KANNE, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Andre Johnson, a state prisoner and amputee, claims that various prison officials violated his Eighth and Fourteenth Amendment rights by confiscating his crutch, failing to provide a safe shower facility, and failing to transfer him to a prison that could accommodate his needs. A magistrate judge, presiding by consent of the parties, granted summary judgment to the officials. Johnson appeals. We affirm.

**I.**

Andre Johnson lost his leg above the knee in a motorcycle racing accident in 1982. Subsequently, in 2000, Johnson was convicted of murder. The Illinois Department of Corrections ("IDOC") requires inmates convicted of certain offenses, including murder, to spend their initial six months of incarceration at a maximum security facility. Although this period can be waived for geriatric or disabled individuals, Johnson did not receive a waiver. In accordance with its policy, IDOC initially placed Johnson in Statesville Correctional Center, a maximum security facility, then transferred him to Menard Correctional Center ("Menard"), another maximum security facility.[1] Johnson remained at Menard from approximately September 6, 2000 until January 10, 2001.

Upon arriving at Menard, Dr. Kumar evaluated Johnson. Dr. Kumar noted that Johnson walked into the room with his prosthesis, without crutches, and without difficulty. Dr. Kumar accordingly determined that Johnson did not need a crutch or cane, ordered it to be confiscated, but ordered that Johnson be provided with a lower bunk on

---

[1]  The record indicates that Johnson's murder conviction occurred on June 9, 2000, which triggered the six-month policy. Johnson, however, has been in IDOC's continuous custody since 1993, presumably on other charges, although the reason for his prior incarceration and the circumstances of the murder conviction are not clear from the record. Prior to his arrival at Menard, Johnson was incarcerated at Joliet Correctional Center and at Statesville Correctional Center, where he was permitted to use crutches and provided with satisfactory accommodations and assistance in the shower. Johnson does not contest the conditions at Joliet or Statesville, only those at Menard.

a low gallery. This diagnosis was different from the diagnosis made previously at other IDOC facilities, where Johnson had been permitted to keep a crutch and provided with assistance in the shower. When Johnson apparently complained, Dr. Adrien Feinerman, Menard's Medical Director, informed Johnson that he could keep the crutch, but only if he were segregated from the general population, since a crutch could be wielded as a weapon. Johnson chose to forego his crutch in order to participate in the activities and privileges available to the general population.

On September 30, 2000, Johnson fell in the shower causing pain in his back. At the time of the fall, Johnson was removing his prosthesis while sitting in a plastic chair provided for him to use in the shower. The chair buckled under Johnson's approximately 260 pounds and he fell to the floor. The particular chair was the standard plastic, patio-type chair used throughout the prison for security reasons (since it cannot be taken apart or used to construct weapons), but it may have been broken. Johnson filed a grievance after his fall. In the grievance, he noted that he had previously fallen in the Menard shower and requested a transfer to an institution with handicap facilities. The grievance did not request the return of his crutch or describe falls in other prison areas.

In response to the grievance, the grievance counselor submitted a transfer request for Johnson, which was denied by off-site administrators. The grievance officer also requested information from Menard's Americans with Disabilities Act (ADA) Coordinator and the Health Care Unit Administrator. They, in turn, recommended bolting a chair to the shower floor, using a stronger chair, or the installation of a concrete bench for Johnson to use. Since it appeared that Johnson's concerns were being addressed, the

Warden ultimately denied Johnson's grievance. Johnson, however, never received a stronger chair or bench in the shower before his transfer from Menard in January 2001 to Pinckneyville Correctional Center, where apparently his needs have been better accommodated.

After his transfer, Johnson filed a *pro se* complaint against the Director of the Illinois Department of Corrections and various officials at Menard, including its Warden, ADA Coordinator, Medical Director, Health Care Unit Administrator, Chief Administrative Officer, and Johnson's Unit Superintendent. The district court appointed counsel for Johnson and, with the consent of the parties, referred the matter to a magistrate judge for disposition. 28 U.S.C. § 636(c). The magistrate judge granted the officials summary judgment. Johnson appeals with the assistance of appointed counsel.

## II.

We review the district court's grant of summary judgment de novo, construing the facts in favor of Johnson, the non-moving party. *Johnson v. Doughty*, 433 F.3d 1001, 1009 (7th Cir. 2006) (citation omitted). Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

At the outset, we address the liability of the Director of the Illinois Department of Corrections, defendant Donald T. Snyder. Johnson sued Snyder and various other prison officials pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Eighth and Fourteenth Amendments. Section 1983 creates a cause of action against "[e]very

person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Since a section 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citation omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (citation and internal quotation omitted).

The magistrate judge granted summary judgment to defendant Snyder because Snyder was not personally involved or responsible for the conditions about which Johnson complains. Johnson claims that there is a genuine issue of material fact as to Snyder's knowledge and involvement. To this end, Johnson submits a self-serving affidavit stating that he informed Snyder and the other defendants of his condition, requested his crutch, and informed them of his fall. *Cf. Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) (holding that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." (internal quotation and citations omitted)). Even crediting this generalized affidavit, its contents do not overcome the affidavit of Nancy S. Tucker, the Manager of IDOC's Office of Inmate Issues, which describes the grievance process. Tucker explicitly states that "Director Snyder did not personally receive, review or decide appeals of inmate grievances," and explains how such tasks were delegated to others in the department. To

survive summary judgment, Johnson "needed to offer some record evidence that because of the purported letters, the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996) (citing *Gentry*, 65 F.3d at 561). The fact that Johnson sent a letter or letters to Director Snyder is insufficient to create a genuine issue of material fact regarding defendant Snyder. *See Vance*, 97 F.3d at 993 (in addition to alleging correspondence with a prison official, a "plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.' " (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))). Critically, there is no evidence that Snyder actually read Johnson's communications or had any subjective awareness of Johnson's condition. To the contrary, there is evidence that Snyder does not review inmate correspondence relating to grievances; that task is delegated to subordinates. Thus, Johnson has not shown that Snyder personally facilitated, approved, condoned, or turned a blind eye to Johnson's situation. *Id.* Summary judgment for Snyder was therefore warranted.

We turn next to Johnson's claim that the remaining officials violated his rights under the Eighth and Fourteenth Amendments. The Eighth Amendment prohibits cruel and unusual punishment. The Supreme Court has interpreted this prohibition, as incorporated through the Fourteenth Amendment, as imposing a duty on states " 'to provide adequate medical care to incarcerated individuals.' " *Doughty*, 433 F.3d at 1010 (quoting *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (citing *Estelle v. Gamble*,

429 U.S. 97, 103 (1976))). Prison officials fail in this duty if "they display deliberate indifference to serious medical needs of prisoners." *Id.* (internal quotations and citations omitted). Thus, a claim that a prison official has violated the Eighth Amendment must demonstrate two elements: (1) an objectively serious medical condition, and (2) deliberate indifference by the prison officials to that condition. *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000).

This court has stated that "[a]n objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Id.* (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). A serious medical condition need not be "life-threatening." *Gutierrez*, 111 F.3d at 1370. To be serious, however, a condition should constitute "a denial of 'the minimal civilized measure of life's necessities.' " *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (quoting *Farmer*, 511 U.S. at 834). Johnson is disabled; the question here is whether his disability under the circumstances constituted a serious medical need. During the four-month period at issue, his amputation had healed, he used a prosthesis, was reasonably diagnosed as not needing a crutch, and was given the option of residing in segregation to have access to a crutch. Under such circumstances, it is not obvious that his condition constituted a "serious medical need" in the context of Eighth Amendment. Regardless, we need not decide whether Johnson's disability constituted a serious medical need, because even assuming that Johnson exhibited such a need, Johnson does not demonstrate that the named defendants were deliberately indifferent.

Deliberate indifference is a subjective standard. To demonstrate deliberate indifference, Johnson must show that the defendants "acted with a sufficiently culpable state of mind." *Doughty*, 433 F.3d at 1010 (internal quotation omitted); *see also Norfleet v. Webster*, 439 F.3d 392, 395-96 (7th Cir. 2006). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998). We have further explained that deliberate indifference is "essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (citing *Farmer*, 511 U.S. at 837). Even gross negligence is "below the standard needed to impose constitutional liability." *Id.* The standard requires that an officer have "subjective awareness" of the serious medical need and then act with indifference to that need. *Riccardo v. Rausch*, 375 F.3d 521, 526 (7th Cir. 2004) (citation omitted). We therefore examine each defendant's subjective awareness and alleged indifference to Johnson's condition.

To demonstrate an Eighth Amendment violation, Johnson asserts claims generally against all of the defendants. Johnson asserts that each prison official knew of his amputation and lack of coordination and, with this knowledge, refused to return his crutch, denied him safe shower facilities at Menard, or failed to transfer him to a better equipped facility. He claims that these actions or omissions constitute deliberate indifference and, therefore, the officials' failure to remedy his situation constituted cruel and unusual punishment under the Eighth Amendment. To evaluate these claims we address each prison official's subjective awareness and actions.

We first note that the district court adopted the magistrate judge's report finding that Johnson failed to exhaust his

administrative claims against defendant Dr. Adrien Feinerman and dismissed those claims without prejudice. Johnson does not appeal that decision. We also note that Johnson did not bring a claim against Dr. Kumar, the doctor who determined that Johnson did not need his crutch. Thus, no claims are before the court regarding any deliberate indifference by the medical professionals who diagnosed his lack of need for a crutch. Furthermore, the grievance itself did not mention the confiscation of the crutch or request a reevaluation of that diagnosis.

As to the remaining defendants, Johnson alleges that Pam Grubman, the Health Care Unit Administrator, was deliberately indifferent to his needs concerning the crutch and shower facilities. Ten days after Johnson filed a grievance regarding his fall in ths shower, the Grievance Officer requested any information relevant to the fall from Grubman. Assistant Warden and ADA Coordinator Eugene McAdory also requested Grubman's input in deciding the grievance. Grubman, a registered nurse, responded with a memorandum stating that she had reviewed Johnson's medical records, confirmed that Johnson was an amputee with a prosthesis, and that no mobility limitations were identified in his records. She also confirmed that a plastic chair was being used for Johnson in the shower and that it was sliding. Grubman then recommended that "a concrete bench [ ] be placed for Inmate to use during showers or a chair bolted to the floor." Grubman thus responded in a timely manner to Johnson's grievance and suggested a remedy. She was not responsible for the confiscation of his crutch, relied on his medical record and the doctor's diagnosis, and issued a recommendation to ameliorate the shower conditions. *See Doughty*, 433 F.3d at 1011 (a prison official's reasonable reliance on a medical professional's diagnosis is not deliber-

ate indifference). Grubman's actions or her alleged failure to do more do not approach "gross negligence" or "criminal recklessness," and thus do not constitute deliberate indifference to Johnson's needs. *Collignon*, 163 F.3d at 988.

Johnson also sued Eugene McAdory, the ADA coordinator at Menard. Again, the allegations are not specific, but we address McAdory's involvement with Johnson's grievance. During the grievance process, the grievance officer requested input from McAdory. McAdory, in turn, requested information from Grubman and Johnson's Unit Superintendent. In a memorandum to the Warden about one month after the request, McAdory acknowledged a problem with the shower chair used by Johnson. He concluded that "Superintendent Frazier will use a chair of stronger material to accommodate Johnson," and recommended that Johnson's grievance be denied because his concerns were "being addressed appropriately." Like Grubman, McAdory investigated Johnson's complaint, acknowledged a problem, and then understood that a stronger chair would be provided. There is no evidence that he was aware that a stronger chair was not provided or of any allegation that he had an affirmative duty to investigate further. Accordingly, McAdory's actions do not constitute deliberate indifference. *Id.*

We next address how Roger Cowan, Menard's Warden, at that time, addressed Johnson's alleged need for a crutch and safer shower facilities. The Warden signed the grievance officer's request for additional information from the Health Care Unit Administrator and the ADA Coordinator, and also concurred in McAdory's recommendation to deny the grievance because Johnson's concerns were being addressed. He also signed a follow-up memorandum to Johnson regarding the grievance, which also

indicated that Johnson's concerns were being addressed. The record does not show that the Warden was aware of a continuing serious medical need and was deliberately indifferent to that need. To the contrary, the grievance documents suggest that the Warden was aware of the problem and believed that his subordinates were attending to the issue. This is not deliberate indifference.

Finally, we consider the actions of Johnson's Unit Superintendent, Michael Frazier. Frazier received copies of the grievance memoranda and was also contacted by the ADA coordinator during the investigation of Johnson's grievance. In his deposition, Frazier recounts that in response to the grievance, he contacted a subordinate prison official who supervised the shower personnel and discussed the problem. In particular, he recalled suggesting reinforcing the chair, perhaps by stacking two of them. He addressed the problem and directed his subordinates to resolve the issue. Since he did not hear further about the problem, he assumed it had been resolved; in his words, "like all things, if it continued to be a problem, they would get back to me and we'd have to, you know, look farther." Furthermore, Frazier also specifically stated that he was only aware of one problem regarding Johnson: the chair in the shower. The evidence, in particular Frazier's own deposition, does not demonstrate that Frazier was deliberately indifferent to Johnson's needs.

The record suggests that each of the defendants responded to Johnson's grievance appropriately and suggested or approved of a remedy. The fact that a concrete bench or railing was not provided for Johnson before he was transferred to another facility is unfortunate, but does not demonstrate that these defendants were deliberately indifferent. The record is bare of evidence suggesting conduct that rises to the level of "criminal recklessness" or

"gross negligence," as is required to meet the standard of deliberate indifference. *Collignon*, 163 F.3d at 988.

### III.

Because Snyder was not personally responsible for or involved in these incidents, and because the remaining prison officials were not deliberately indifferent to Johnson's condition, summary judgment was proper.

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*