UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 23, 2006[*]
Decided August 23, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-4396

| | |
|---|---|
| WAYMAN THOMAS,<br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Indiana, South Bend Division |
| *v.* | |
| | No. 3:03-CV-862 RM |
| STANLEY KNIGHT,<br> *Defendant-Appellee.* | Robert L. Miller, Jr.,<br> *Chief Judge.* |

**O R D E R**

Indiana inmate Wayman Thomas was beaten by other prisoners at the Miami Correctional Facility in April and October of 2003. Thomas believes that his attackers were provoked by former Correctional Officer James; Thomas, who is white, alleges that James started harassing him in February 2003 and eventually urged black gang members to attack him by falsely stating that he is racist.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Thomas sued James and the prison superintendent, Stanley Knight, under 42
U.S.C. § 1983; he claimed that James was directly responsible for the beatings and
that Knight was on notice of James's misconduct but did nothing to stop it. At the
screening stage, *see* 28 U.S.C. § 1915A, the district court concluded that Thomas
failed to state a claim against James, but allowed the suit to proceed against
Knight. The court later granted summary judgment for Knight on the alternative
grounds that Thomas had failed to exhaust his administrative remedies as required
by 42 U.S.C. § 1997e(a), and that, regardless, he produced no evidence that Knight
actually knew about, but disregarded, the risk of harm. Thomas appeals only the
grant of summary judgment for Knight, which we affirm on the merits rather than
on the basis of the exhaustion issue.

When Knight moved for summary judgment, his only contention was that
Thomas had not exhausted his Eighth Amendment claim before bringing his pro se
lawsuit. In support of that position, Knight submitted the declaration of Miami
grievance specialist Amy Clark. Clark explains that in the Indiana prison system
there are five steps to the inmate grievance process: Step 1, a complaint; Step 2, a
formal grievance; Step 3, an appeal to the grievance committee if the formal
grievance is denied; Step 4, a second appeal to the facility head; and Step 5, a final
appeal to the regional director. Clark further notes that inmates have 48 hours
after an incident (excluding weekends and holidays) to submit a complaint at
Step 1. In her declaration Clark notes that she has no complaints on file from
Thomas that were filed within 48 hour of either the first assault on April 24, 2003,
or the second assault on October 19, 2003. Therefore, Knight argued, Thomas failed
to exhaust.

Thomas—who by then had hired counsel—countered that he followed the
five-step grievance process and at each step "complained of harassment and threats
at the hands of correctional officer James" which led to his injuries. Thomas
attached his five submissions, which indicate the following:

On March 10, 2003, he filed a complaint at Step 1 alleging that he was "being
harassed and stalked by C/O James." He explained that James was falsifying
conduct reports and had threatened that she would keep doing so until one stuck.
The grievance specialist responded that "Mr. Thomas is not being harassed by any
means."

On March 19, 2003, Thomas filed a formal grievance at Step 2. He stated:
"I filled out a Step #1 Grievance on 3-10-03 because of C/O James's actions towards
me and her harassing behavior towards me . . . . C/O James has went to other
inmates telling them I called her a race trading whore! It was 2 black inmates she
told . . . ." A grievance officer concluded that "there is no proof of any harassment."

On April 22, 2003, Thomas filed his first appeal at Step 3. He asserted that he'd been having "many problems with C/O James" and had been told by other guards that James had encouraged them to participate in the harassment. He also said that he learned from other inmates that James had told "black inmates that I was a racist and got me into a fight!" Thomas demanded that he be moved out of Miami. On April 24, while this initial appeal was pending, Thomas was assaulted for the first time. On May 7 the grievance committee denied Thomas's appeal with the explanation that "Steps 1 & 2 responses stand."

On May 30, 2003, Thomas appealed to Superintendent Knight at Step 4. This time he stated that he'd "put in 3 prior grievances pertaining to ongoing conflict" with James. He wrote that a prison official had statements from other guards saying that James had encouraged them to join in the harassment, as well as "2 statements from black inmates that C/O James went to and told them I was racist and to beat me up!" He concluded that James had put his life in jeopardy, and that he was not safe at Miami. Christopher Johnson, on behalf of Knight, denied the appeal with the explanation that there was "no evidence" to support Thomas's contentions.

On November 19, 2003—after the second assault in October—Thomas appealed to the regional director at Step 5. He stated:

> [I have] put in Steps 1-5 Grievance and sent 4 to Stanley Knight and letters letting him know my situation! C/O James has caused me a lot of unwanted problems here at M.C.F.! She went to the leader of the Black Gan[g]sters Disciples and told them I was a racist and to get me! C/O James has since quit working here but my problems have been ongoing and have since got much worse. . . . On 4-24-03 I had to protect myself due to this issue with C/O James and on 10-19-03 I was taken to outside hospital with broken nose [and eye damage].

Once again Thomas requested a transfer. The regional director responded to Thomas's appeal by returning it with the explanation that the subject matter was "non-grievable" because "issues involving classification and disciplinary matters are not grievable." Thomas was told to address his "issues though the appropriate appeal procedures."

Upon receiving Thomas's response to his motion for summary judgment, Knight argued that, although Thomas utilized the five-step process with respect to the alleged harassment by James, he still had failed to exhaust because he did not restart the process with *new* complaints at Step 1 after each assault. Knight pointed to Paragraph XIV of the applicable grievance procedures, which provided: "Appeals must address the basic issue of the initial grievance. They may contain

additional facts or information regarding the original issue and may raise concerns regarding the response from the previous level.  Appeals shall not raise new and/or unrelated issues."  Ind. Dep't Corr. Admin. P. 00-02-301, § XVIII (2003) (superseded effective Dec. 1. 2005).  Knight argued that the attacks in April and October 2003 were, in both instances, a "new issue" that Thomas improperly included in his appeals concerning the harassment by James.  Therefore, Knight maintained, Thomas did not exhaust all the administrative remedies available to him because, in order to do so, he needed to file separate grievances about each attack, and work his way through the grievance process regarding each attack.

The district court accepted Knight's position.  And while the exhaustion issue was the sole basis for Knight's motion, the district court went on to conclude that summary judgement would have been appropriate in any event because Thomas produced no evidence that Knight actually knew about, but consciously disregarded, a substantial risk of harm to Thomas.

On appeal Thomas makes no argument about the dismissal of James and thus has abandoned his lawsuit as to her.  *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.,* 167 F.3d 1170, 1173 (7th Cir. 1999) (arguments not raised in opening brief are waived); *Provident Sav. Bank v. Popovich,* 71 F.3d 696, 699-700 (7th Cir. 1995) (pro se appellants are subject to same waiver rules as represented parties).  His only argument is that the district court erred in concluding that Knight was entitled to summary judgment on the exhaustion question.  Thomas, who once again is pro se, essentially restates his contention at summary judgment that he fully exhausted by completing the five-step grievance process concerning the harassment by James; he adds that he tried to file "additional grievances" but was told by "counselors and even the Defendant" that "his issues were being presented in the grievance herein."  Knight in turn maintains that, while "Thomas did technically exhaust his administrative remedies in that he completed the five step grievance process, Thomas failed to file his grievances timely in response to either attack and is foreclosed from litigation in this matter."

We review the application of § 1997e(a) de novo.  *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).  To exhaust administrative remedies an inmate must follow the facility's administrative rules about the timing and content of grievances, *see Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002), provided that the rules do not "establish a requirement inconsistent with the federal policy underlying § 1983 and § 1997e(a)," *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002).

We are skeptical of the view advocated by Knight and accepted by the district court.  As Knight acknowledges, Thomas completed the five-step grievance process. *See* Ind. Dep't Corr. Admin. P. 00-02-301, § XVIII (2003) (superseded effective Dec.

1, 2005).  At each step Thomas complained that James was harassing him and described various consequences stemming from that harassment.  And while Thomas brought up new events related to the harassment as his grievance worked its way though the administrative appeals process, the governing procedures specifically permitted appeals to "contain additional facts or information regarding the original issue."  *Id.* § XIV.  If Thomas is right about the motivation for the assaults on April 24 and October 19, then the two attacks are not just related, but directly traceable, to the "original issue" in his complaint at Step 1: that he was being "harassed and stalked" by James.  Thomas did add more facts as the harassment continued and had its intended and foreseeable effect, but the basis of his complaint never changed.  *See Johnson v. Johnson*, 385 F.3d 503, 520-21 (5th Cir. 2004) (holding that prisoner was not required to file discrete grievance for each instance of sexual assault he suffered once he completed the two-step grievance procedure alerting prison authorities that he was being subjected to repeated assaults and not receiving any protection); *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003) (explaining that state rule requiring prisoner to define the grievable issue at Step I of the grievance process did not "preclude a prisoner from presenting additional factual detail at Step II and Step III that clarifies an allegation made at Step I").

Moreover, none of the officials in the grievance process rejected Thomas's submissions as untimely or procedurally inadequate to grieve the escalating harassment by James.  Instead, at each of the first four stages, Thomas's submission was evaluated on the merits, and a conclusion was reached that his allegations were unsubstantiated.  And while the regional director's designee stated at Step 5 that Thomas's last appeal raised a "non-grievable issue," Knight does not defend that conclusion or argue that Thomas somehow failed at Step 5.  Indeed, Knight has conceded that Thomas utilized each step of the process; Knight's only argument is that Thomas had to start all over again each time he was assaulted.  Thus, Knight cannot now argue that Thomas's submissions were untimely or otherwise insufficient to comply with procedural rules.  *See Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) ("[W]hen a state treats a filing as timely and resolves it on the merits, the federal judiciary will not second-guess that action, for the grievance has served its function of alerting the state and inviting corrective action"); *Gates v. Cook*, 376 F.3d 323, 331 n.6 (5th Cir. 2004) (holding that prison officials cannot claim that prisoner failed to exhaust based on technical defect if officials accepted defective grievance and addressed its substance).

Still, we do not have to decide the exhaustion question definitively because Thomas has not persuaded us to overturn the district court's alternative conclusion that he couldn't prove Knight appreciated but disregarded the risk arising from James's harassment.  We recognize that Knight did not move for summary judgment on this basis, and generally we are reluctant to affirm the grant of

summary judgment on a ground not urged by the moving party because, in such cases, the opponent was not on notice that he must present evidence on that issue. *See Nabozny v. Podlesny*, 92 F.3d 446, 450-51 (7th Cir. 1996); *Brown v. United States,* 976 F.2d 1104, 1109-10 (7th Cir. 1992). But we can affirm a grant of summary judgment on any basis supported by the record, s*ee Burrell v. Powers*, 431 F.3d 282, 285 n.1 (7th Cir. 2005), and even when that ruling caught the appellant unaware, we will not reverse unless he demonstrates that he was harmed by the lack of notice, *see Massey v. Helman*, 259 F.3d 641, 646 n.8 (7th Cir. 2001); *Alioto v. Marshall Field's & Co.,* 77 F.3d 934, 936 (7th Cir. 1996). That is, the appellant "must show that notice and an opportunity to respond would have mattered" because he "would have been able to create a material factual dispute." *Alioto*, 77 F.3d at 936. And in this case Thomas did not argue in his opening brief that the district court's alternative analysis cannot stand, nor has he filed a reply brief contesting Knight's position that "lack of personal involvement would be an alternative basis for affirming" the district court.

Prison administrators are liable under § 1983 for failing to protect their charges against violence only if they are deliberately indifferent, which means they knew of and disregarded an excessive risk to inmate safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). There is no *respondeat superior* liability under § 1983; a plaintiff must demonstrate that supervisory officials are personally responsible for alleged deprivations. *See Monell v. Dep't of Social Serv's*, 436 U.S. 658, 694 (1978); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1995). Supervisory officials may be personally responsible for the constitutional torts of their subordinates only if the official knows of and facilitates, approves, condones, or turns a blind eye to the conduct. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000); *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995).

Thomas apparently assumes that the outcome of Step 4 and Knight's lack of any overt response to his "several other pieces of correspondence" create an inference that the superintendent knew about the harassment and the likelihood of physical assaults. But while a letter to a warden may provide a level of knowledge that would require him to take action, *see Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)*; Reed v. McBride,* 178 F.3d 849, 854 (7th Cir. 1999), Thomas does not suggest to us that his correspondence provided Knight with any information beyond what was in his various submissions in the grievance process. *See Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996) (affirming grant of summary judgment for warden on claims of deliberate indifference and excessive force where inmate argued she sent warden a letter recounting underlying facts but did "not supply, in her description of the purported letter, any detail to permit the conclusion that the letter sufficiently advised the warden of the situation to require her intervention"). Nor does Thomas suggest that with a remand he could produce evidence that

Knight actually saw or read his correspondence. *See Johnson*, 444 F.3d at 584. Instead, as we read his complaint and his brief in this court, Thomas's claim against Knight comes down to his belief that Knight can be liable because his designee did not rule differently at Step 4 of the grievance process. A warden, however, does not incur liability under § 1983 for a subordinate's conduct just by participating in the grievance process. *See Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005); *Steidl v. Gramley*, 151 F.3d 739, 741-42 (7th Cir. 1998); *Antonelli*, 81 F.3d at 1428.

Accordingly, because Thomas has given us no reason to believe that he could demonstrate that Knight bears personal responsibility for failing to protect him, we AFFIRM the decision of the district court.