NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted March 8, 2007[*]
Decided March 12, 2007

**Before**

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 06-2049

| | |
|---|---|
| CHARLES JONES, | Appeal from the United States |
| *Plaintiff-Appellant*, | District Court for the Central |
| | District of Illinois |
| *v.* | |
| | No. 04-3146 |
| DONNA DREW, et al., | |
| *Defendants-Appellees*. | Harold A. Baker, |
| | *Judge*. |

## O R D E R

Charles Jones, a prisoner in the custody of the Illinois Department of Corrections (IDOC) who suffers from bunions, brought suit *pro se* under 42 U.S.C. § 1983 against various doctors and non-medical prison officials. He alleged that they violated the Eighth Amendment for years when they responded to his bunions with only "conservative treatment" rather than alternative treatments, like surgery, which he finally received in 2005. The medical directors at Dixon Correctional

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Center and Pickneyville Correctional Center, two institutions where Jones claims he received the inadequate treatment, and Health Professionals, Ltd., a corporation that contracted with the IDOC to provide healthcare services at IDOC facilities, settled with Jones. The district court granted summary judgment for the remaining defendants and Jones appeals. We affirm.

According to the record evidence, along with all the reasonable inferences construed in Jones's favor, Jones suffered for ten years with bunions, a painful deformity of the bones and joint between the foot and the big toe. In 1998, while incarcerated at the Graham Correctional Center, an orthopedic surgeon evaluated his bunions and recommended surgery on his left foot. This doctor, an outside consultant to Graham, explained that standard orthopedic practice first treats bunions conservatively with shoe modification, bunion pads, or warm soaks. He added that "there's no hard and fast rule" for when such conservative treatment should be abandoned for surgery. Consistent with this judgment, the medical director at Graham, who ultimately decided whether to order surgery, considered the consultant's recommendation but continued to treat Jones conservatively.

Over three years later, Jones was transferred to Dixon where defendant Jerry Sternes was the warden. Within a few months of his transfer, the medical director at Dixon examined his bunions and ordered special wide shoes to treat them. Jones, unsatisfied with this treatment, wrote to defendant Dr. Willard Elyea, who is the medical director of the IDOC, complaining about this medical care. Dr. Elyea never personally learned of Jones's condition because his staff screens the voluminous correspondence addressed to him, and they did not forward him any complaints regarding Jones. But in this litigation, Dr. Elyea described the treatments that Jones received for his bunions as "standard and acceptable."

Jones then filed a grievance with the prison regarding his medical care. Defendant Doug Hoyle reviewed that grievance and denied it after examining Jones's medical records, which confirmed that he received special shoes and that several doctors had examined his bunions. Warden Sternes concurred with Hoyle, but he did not personally review the grievance because he delegated that task to others within his office. Jones appealed the decision, but defendant Terri Anderson of the Administrative Review Board denied the appeal. Jones also complained about his treatment to Donna Drew, who was the Health Care Administrator at Dixon and a registered nurse.

While Jones was receiving conservative treatment for his bunions, the Dixon medical director referred him to an orthopedic specialist in 2002, defendant Dr. Xaman Tulyasathien (an independent contractor who provided orthopedic services at Dixon). Dr. Tulyasathien examined Jones and recommended to the medical director at Dixon that he receive firm arch supports "to correct the pronation of both

feet" and noted that "[s]urgical correction may be considered." According to Jones, Dr. Tulyasathien informed him that "if he was a patient of his on the street he would not hesitate to surgically correct" his bunions but that the medical director and Dixon probably would avoid surgery to save money. Jones received the recommended arch supports to help alleviate the pain associated with his bunions but again remained dissatisfied with his medical care and attempted to notify Warden Sternes, Dr. Elyea, and Nurse Drew of this in writing.

In February 2004 Jones was transferred from Dixon to Pickneyville and in June 2004 the medical director there examined his bunions and advised Jones to continue to wear his wide-toed shoes. That day Jones filed a grievance again alleging that his treatment was inadequate and ineffective. Dean Blades, a Grievance Officer at Pickneyville and a defendant in this case, denied Jones's grievance after determining that the medical director had examined him and recommended continued use of the wide-toed shoes. Defendant Melody Ford, a member of the Administrative Review Board, concurred and denied Jones's appeal.

Subsequently, Jones filed this suit. After successfully surviving motions to dismiss, Jones moved for appointment of counsel. The court denied this request, noting that based on Jones's filings, previous litigation experience, and the nature of this case, he was "more than competent" to try his case without representation. While this litigation was pending, the medical director at the Illinois River Correctional Center (where Jones had been transferred in August 2004) referred Jones to a specialist who "suggest[ed]" surgery on both of his feet. The medical director followed the suggestion and in January 2005 Jones's bunions were surgically corrected.

After Jones received this surgery, all the defendants and Jones moved for summary judgment. The district court concluded that Jones presented sufficient evidence for a jury to conclude that the bunions were a serious medical need but that the defendants had not been deliberately indifferent to that need. Accordingly, the court granted summary judgment for the defendants and denied Jones's motion for summary judgment.

Jones first argues that the district court abused its discretion by refusing to appoint counsel. An indigent civil litigant has no right to appointed counsel, but he can request that an attorney handle his case pursuant to 28 U.S.C. § 1915(e). We review a district court's denial of such a request for an abuse of discretion. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). The court does not abuse its discretion if it reasonably concludes that, given the nature of the case, the plaintiff appeared competent to try the case himself. *Id.* at 1006-07. At the time the court ruled on the motion for counsel, Jones had filed a coherent complaint that survived 28 U.S.C. § 1915A screening and motions to dismiss, he evinced great familiarity

with his medical condition, and he also had ably pursued earlier litigation. Because the district court reasonably concluded that Jones could competently present his case, the court did not abuse its discretion when it denied his request for appointed counsel.

Jones also challenges the district court's entry of summary judgment for the defendants. We review a district court's grant of summary judgment *de novo*. *Green v. Butler*, 420 F.3d 689, 694 (7th Cir. 2005). To succeed on an Eighth Amendment claim, the prisoner must demonstrate that the defendants were deliberately indifferent to a serious medical condition. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). The defendants do not dispute that Jones's bunions constituted a serious medical condition. They maintain, however, that Jones failed to bring forward evidence from which a jury could determine that the defendants were deliberately indifferent to his bunions. To establish deliberate indifference Jones must demonstrate that the prison official "'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

The district court properly granted summary judgment to defendants Hoyle, Blade, Anderson and Ford, the non-medical officers who considered his grievances or denied the appeals. We have previously emphasized that if "'a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)) (granting summary judgment for grievance officer who reviewed complaint and verified that plaintiff was receiving treatment); *see also Perkins v. Lawson*, 312 F.3d 872, 875-76 (7th Cir. 2002). All four of these defendants, who lacked medical training, undisputably relied on the expertise of the medical directors when they concluded that Jones's grievance should be denied. Accordingly, they were not deliberately indifferent to Jones's bunions.

The district court also properly granted summary judgment for Sternes, the warden at Dixon who had delegated medical and grievance functions to subordinates. As a non-medical defendant, Sternes too is not liable for reasonably relying on the medical judgment of professionals. In addition, we have repeatedly noted that liability under § 1983 arises only when a defendant is personally responsible for the deprivation of which the plaintiff complains. *See e.g., Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To be personally liable for a subordinate's acts, a supervising official "'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.'" *Johnson*, 444 F.3d at 583-84 (quoting *Gentry,* 65 F.3d at 561). Although Jones mailed a complaint to

Sternes and filed a grievance at Dixon describing his frustration with his treatment, there is no evidence that Sternes personally received or read these communications since he delegated the review of prisoner complaints to others within his office. For this reason too, summary judgment for Sternes was warranted. *Johnson*, 444 F.3d at 584 (granting summary judgment since official presented evidence that he did not receive, review or decide plaintiff's grievance).

The court also properly granted Dr. Tulyasathien's motion for summary judgment. Dr. Tulyasathien told Jones that he would "not hesitate" to recommend surgery if Jones were not in prison. But because the Dixon medical director would not likely approve surgery for economic reasons, Dr. Tulyasathien recommended only that Jones receive arch supports and that surgery should merely "be considered." From this, one could infer that Dr. Tulyasathien recommended conservative treatment not for medical reasons, but for economic ones. But the Eighth Amendment does not provide a right to a specific treatment. *Forbes*, 112 F.3d at 267 ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). Dr. Tulyasathien's preference for a less costly treatment is not deliberate indifference unless Jones has evidence that the recommendation for arch supports plus a suggestion to consider surgery "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). Jones's own evidence prevents him from showing this. The doctor who recommended surgery for Jones's left foot in 1998 explained that conservative treatment—like arch supports— is a medically recognized response to bunions and that there is no "hard and fast rule" to determine when conservative treatment should be abandoned for surgical correction. Dr. Tulyasathien followed this conventional orthopedic practice; he recommended arch supports, and told the medical director at Dixon to consider surgery. Jones's contention that this treatment was ineffective and that Dr. Tulyasathien should have unequivocally recommended surgery might make out a negligence cause of action, but it does not make out an Eighth Amendment claim. *Id.* at 990; *Forbes*, 112 F.3d at 266.

Because Jones received constitutionally adequate care for his bunions, the court also properly entered summary judgment for Drew, the Health Care Unit Administrator at Dixon, and Dr. Elyea, the medical director of the IDOC. Even if, as Jones contends, Dr. Elyea and Drew knew about Jones's complaints about his bunions, there is no evidence that they regarded the medical care Jones was receiving to be devoid of professional judgment, as is required to establish a constitutional violation. *See Johnson*, 444 F.3d at 583-84. To the contrary, Dr. Elyea regarded the conservative treatment as standard. Furthermore, both Drew and Elyea monitored the health care provided to inmates including Jones, and

according to the medical records available to them, concluded that Jones received adequate, albeit conservative, treatment throughout his time at Dixon and Pickneyville.

AFFIRMED.