NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 11, 2008[*]
Decided June 13, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-3807

| | |
|---|---|
| ARBOLEDA ORTIZ, | Appeal from the United States District |
|     *Petitioner-Appellant*, | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
|     *v.* | |
| | No. 2:05-cv-246-LJM-WTL |
| MARK A. BEZY, et al., | |
|     *Respondents-Appellees*. | Larry J. McKinney, |
| | *Judge*. |

**O R D E R**

Arboleda Ortiz, a Colombian national, is a federal prisoner on death row at the Federal Correctional Complex in Terre Haute, Indiana. He sued the warden, Mark Bezy, the director of the prison's medical clinic, Dr. Thomas Webster, and its Health Services

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

Administrator, Sharon Seanez, claiming that because of his death row status, they were deliberately indifferent to his medical needs, in violation of the Eighth Amendment. The district court denied Ortiz's motions for appointment of counsel and for a continuance to complete discovery under Federal Rule of Civil Procedure 56(f) and then granted the defendants' motion for summary judgment. Ortiz challenges these decisions. We affirm in part, reverse in part, and remand.

We recite the facts in the light most favorable to Ortiz. *See Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005). In April 2001 an opthamologist examined Ortiz and found that Ortiz's vision was 20/80 in each eye and that he suffered from pterygia, which are abnormal triangular masses of thickened conjunctiva that extend over the cornea.[1] The doctor noted that Ortiz's pterygia were "visually significant," and he recommended surgery. The request for surgery was denied in October 2001. Although no reason was given for the denial, at the top of two pages reflecting the doctor's recommendation and the denial, a handwritten note states, "NO TOWN TRIP." Over the next five years, Ortiz returned numerous times to the medical unit for eye complaints, and doctors continued to recommend that his pterygia be surgically removed. Specifically, in April 2003 one doctor noted that Ortiz's vision was 20/100 and that he had "difficulty seeing." Records from the following months include doctor notes that the pterygia were "causing corneal distortion." In each instance, surgery was either denied or deferred, with no reason for the decision appearing in Ortiz's file. Dr. Webster, the director of the prison's medical clinic since 2002, initialed some of the medical forms, and his name appears on others. Though the doctors' notes provide no support for his assertion, Dr. Webster says that he denied the surgery requests because the eye doctors who examined Ortiz found that Ortiz's pterygia were not affecting his vision. Dr. Webster explained this rationale for denying surgery only after Ortiz filed suit; he provided no contemporaneous records supporting his explanation. In 2006, about a year after Ortiz filed suit, he received surgery to remove one of his pterygia, but one remains.

Mark Bezy, the current warden since 2004, and Sharon Seanez, who has handled the administration of the prison medical clinic since 2000, round out the defendants on appeal. Both Bezy and Seanez knew of Ortiz's eye problems, but Bezy delegates all medical care to the clinic staff, and Seanez handles only administrative aspects of the medical clinic and is not involved in care decisions.

Ortiz exhausted his prison remedies and then alleged that the defendants had denied him proper treatment (surgery) for his pterygia at least in part because of a prison policy

---

[1] The defendants claim and the district court found that Ortiz's diagnosis was a year later, but the doctor's notes are dated April 2001.

disallowing death row prisoners from leaving the prison for medical treatment. After the defendants answered Ortiz's complaint, the court set a two-month discovery schedule. Ortiz immediately asked the court to recruit counsel to help him with his case because he did not speak English well and was illiterate in both English and Spanish and therefore dependent on another inmate to write all of his legal filings. The court denied Ortiz's motion the next day saying only that it "w[ould] not make an outright request that counsel represent the plaintiff at this juncture" but would "be alert to the possibility of recruiting representation" in the future.

One day before the close of discovery, Ortiz wrote a letter to the court stating that because of his death row classification, he had only recently been allowed to meet with and show the court's discovery order to the inmate who was writing his legal filings. Ortiz asked the court for an extension of the discovery deadline and for the court to send all court orders directly to the other inmate who could translate them for him. In response, the district court extended discovery by one month, but it denied Ortiz's request to have his court mail sent to another inmate. Ortiz then immediately requested counsel again, but the court, in an order almost identical to the first, denied that request. In doing so, the district court doubted that Ortiz's spoken English skills were as dismal as he had represented them apparently because, in his direct criminal appeal, the Eighth Circuit found that the trial court had not clearly erred in finding that Ortiz had understood his Miranda warnings given in English. *See United States v. Ortiz*, 315 F.3d 873, 885 (8th Cir. 2002).

While discovery was still open, the defendants moved for summary judgment. They claimed that the records showed that the doctors who examined Ortiz found that his pterygia did not affect his vision and that Ortiz could not show that the defendants were deliberately indifferent. Ortiz did not respond to the motion, and the court granted summary judgment to the defendants. Ortiz wrote the court within a month, explaining that he had not received a copy of the defendants' motion for summary judgment and therefore could not respond to it. The court vacated its judgment and allowed Ortiz to respond to the motion.

Upon receiving the motion, Ortiz scrambled to further document his claims. He wrote letters to his doctors requesting opinions on the effects of the pterygia and of the delay in removing them. He also requested documents from the defendants, but the court ordered that they did not have to respond because the request came after the discovery deadline. Ortiz then moved for more time for discovery under Federal Rule of Civil Procedure 56(f), specifically listing multiple categories of documents that he was in the process of obtaining from outside medical sources, in addition to the discovery requests that the court had just ordered were too late. He also reminded the district court that it had left open the possibility of appointing counsel for him and that it "might be appropriate for the

court to consider doing so at this juncture." The court partially granted Ortiz's request for a continuance, giving him an additional two weeks to respond. But because the court issued its order only one day before Ortiz's deadline to respond to the motion for summary judgment, Ortiz did not take advantage of the extra time and filed his response the next day. The court did not mention Ortiz's third request for the appointment of counsel.

After the motion for summary judgment was fully briefed, the court "affirm[ed] and re-adopt[ed]" its original order granting summary judgment to the defendants. It added that the prison had diagnosed, monitored, and evaluated Ortiz's condition and that "[w]hen the recommendation was made that surgery be performed, that recommendation was followed and the surgery was conducted within 75 days." The court found that any suggestion that the surgery should have been done earlier would amount to a mere difference of opinion. The court held that Saenz and Bezy do not provide medical care and merely relied on the judgment of others and that Dr. Webster was not deliberately indifferent because he did not depart from professional standards.

On appeal Ortiz argues that the court improperly granted summary judgment to the defendants and challenges the denials of his requests for counsel and his request for a continuance under Rule 56(f). We review de novo a grant of summary judgment, which is appropriate when all evidence demonstrates that there remains "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greeno*, 414 F.3d at 652 (quoting FED. R. CIV. P. 56(c)). To prevail on his claim of deliberate indifference, Ortiz must show first that his pterygia are "objectively, sufficiently serious," meaning that either a physician has diagnosed them as mandating treatment or that even a lay person would recognize that a doctor's attention is needed, and second that the prison officials knew of and disregarded the risk to his health. *See Greeno*, 414 F.3d at 652-53. For the latter element, a factfinder may determine that a non-medical prison official disregarded a risk if the risk was obvious. *Id*. at 653. Although a prisoner's mere disagreement with a course of treatment is insufficient to hold a medical defendant liable, the defendant may be liable if a trier of fact could infer that the treatment given was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quotation marks and citation omitted).

The defendants argue that Ortiz did not show that his pterygia constitute a serious medical condition, but because most of the doctors—including specialists—who examined Ortiz recommended surgery and all prescribed some treatment, Ortiz has shown a genuine issue of material fact on this issue. *See Williams v. Liefer*, 491 F.3d 710, 714-16 (7th Cir. 2007); *Greeno*, 414 F.3d at 653. We also think that Ortiz has shown a genuine issue of fact about whether the seriousness of his condition would have been obvious even to a lay person,

given that they were described as "visually significant" growths on his eyes.  *See Williams*, 491 F.3d at 714-16; *Greeno*, 414 F.3d at 653,

Further, Ortiz has shown a genuine issue of material fact about whether Dr. Webster was deliberately indifferent to his medical needs.  Dr. Webster, the only medical defendant, denied Ortiz surgery after eye specialists had recommended it, and although he belatedly provided an explanation for the denials—that the eye specialists found that the pterygia did not affect Ortiz's vision—the explanation does not square with the record.  Instead, the records show that his vision worsened from 20/80 to 20/100 between 2001 and 2003, that he had "difficulty seeing," and that the pterygia were "causing visual distortion."  And, contrary to the district court's recitation of the facts, Ortiz did not receive surgery within 75 days of when it was first recommended; instead, his surgery to remove only one of the pterygia occurred in 2006, over 5 years after the initial recommendation and only after Ortiz filed this lawsuit.  Finally, Ortiz has shown that some of his medical records bear the unexplained "NO TOWN TRIP" notation, which read in Ortiz's favor suggests that he was denied surgery because it would have required a trip to town.  Although the defendants deny that the prison has a policy against town trips for death row inmates, they offered no explanation for the notation, and they gave no other contemporaneous reason for denying Ortiz's surgery.  This combines to create a genuine issue of material fact about whether Dr. Webster was deliberately indifferent to Ortiz's medical condition.  *See Gil v. Reed*, 381 F.3d 649, 663-64 (7th Cir. 2004) (holding that plaintiff showed genuine issue of material fact of doctor's deliberate indifference when doctor failed to follow specialist's advice, despite doctor's excuse for failure).

Unlike Dr. Webster, however, neither Seanez nor Bezy is a medical care provider.  Even if Ortiz told both of them about his pterygia as they made their weekly rounds, he has not provided evidence of their deliberate indifference.  After all, a non-medical prison official is not deliberately indifferent for relying upon medical staff to make appropriate decisions regarding treatment.  *See Greeno*, 414 F.3d at 656.  Thus although the facts here suggest that both Bezy and Seanez knew of Ortiz's pterygia and that they were serious, nothing suggests that these defendants were deliberately indifferent to his medical needs.  The district court therefore properly granted summary judgment to these defendants.  *See Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (holding that where warden knew of problem but believed medical staff was attending to prisoner's needs, the warden was not deliberately indifferent).

Ortiz also argues that the district court erred in denying his motions for a continuance and for appointment of counsel.  The denial of these motions, he argues, prevented him from discovering additional documents to support his claims against the current defendants but also from identifying additional defendants who were involved in

denying his surgery, particularly from the pre-2002 period before Dr. Webster arrived. We review each denial for an abuse of discretion. *Hammer v. Ashcroft*, 512 F.3d 961, 971 (7th Cir. 2008). Although the district court granted Ortiz a two-week continuance in response to his Rule 56(f) motion, it is difficult to characterize that as "granting" his motion given that the extension came one day before Ortiz's brief was due and was too late for him to find out about it before the original due date. Nevertheless, Ortiz had not pursued any discovery during the discovery period. When a litigant delays in procuring necessary discovery, it is not an abuse of discretion to deny a Rule 56(f) motion for a continuance. *Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002).

Next, in deciding whether to recruit counsel for an indigent civil plaintiff, the district court must examine whether the plaintiff has attempted to obtain counsel on his own, which is a "threshold inquiry," and, if he has, or shows that he was precluded from doing so, analyze his abilities as related to "the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). A district court abuses its discretion when it fails to apply this test in evaluating a prisoner's request for counsel, but we will reverse only if the prisoner shows that he was prejudiced by the denial. *Id*. at 659, 659 n.14. When the district court in this case denied Ortiz's motions for counsel, it lacked the benefit of *Pruitt*'s clarification of the standard for recruiting counsel, and it abused its discretion in failing to apply the two-part inquiry. Ortiz, however, never explained to the district court why he did not attempt to acquire counsel on his own. He therefore could not have overcome the "threshold inquiry" of the *Pruitt* test, and accordingly he cannot show prejudice from the past denials of counsel. We note that on appeal Ortiz has explained that his illiteracy precluded him from contacting counsel, which appears to be a reasonable explanation. But because Ortiz never gave this explanation to the district court, we cannot rely on it to establish prejudice from the district court's denials of Ortiz's motions for counsel. On remand, however, we suggest that the district court reconsider whether it should recruit counsel for Ortiz. After all, the case involves complex medical records spanning years, and Ortiz's illiteracy would hamper his efforts to try the case without counsel.

Accordingly, the judgment is REVERSED as to Dr. Webster and REMANDED for further proceedings. In all other respects, the judgment is AFFIRMED.