NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 4, 2009[*]
Decided February 6, 2009

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 08-1622 | |
| | Appeal from the United States District |
| MARK R. LOWE, | Court for the Western District of |
|     *Plaintiff-Appellant*, | Wisconsin. |
| | |
|     *v.* | No. 06 C 680 |
| | |
| ROMAN KAPLAN, MARY JO | Barbara B. Crabb, |
| SCHMITT, and DAN KLOTZBACH, | *Chief Judge*. |
|     *Defendants-Appellees*. | |

**O R D E R**

Mark Lowe filed a complaint under 42 U.S.C. § 1983 alleging that during his incarceration at Kettle Moraine Correctional Institution, Larry Jenkins, the prison's warden, William McCreedy, the manager of the Health Services Unit, Dr. Horn, Dr. Roman Kaplan, Nurse Mary Jo Schmitt, Nurse Dan Klotzbach, and others on the warden's staff deliberately ignored an injury to his back that he sustained after slipping on some ice. At the initial

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. FED. R. APP. P. 34(a)(2).

screening, the district court dismissed his complaint against Jenkins, McCreedy, Dr. Horn, and the warden's staff, *see* 18 U.S.C. § 1915(e)(2), and it later granted summary judgment to Dr. Kaplan, Klotzbach, and Schmitt.  On appeal Lowe argues that the district court should have allowed him to proceed against the defendants dismissed at screening because, he contends, the evidence he produced at summary judgment demonstrated their culpability. He also insists that the district court erred in granting summary judgment to Klotzbach and Schmitt.  Because Lowe produced insufficient evidence that any of the defendants deliberately ignored his back condition, we affirm.

The record, construed in Lowe's favor, reveals the following.  On the day of his fall, January 30, 2006, Lowe visited the Health Unit, where he was given muscle cream and informed that he would soon receive Tylenol.  The next day he told the Health Unit that he could barely move his neck and back.  Nurse Schmitt then prescribed balm, heat and ice, and gentle stretching.  Two days later, when Lowe complained that the treatments were ineffective, the nurse advised that the measures she recommended would reduce his pain over time.  Within three weeks, the Health Unit also arranged for Lowe to see Dr. Kaplan, who was substituting for Dr. Horn, Lowe's regular physician.  Dr. Kaplan watched Lowe perform certain physical motions and told him to continue using the balm.  Dr. Kaplan could not find an "organic cause" for Lowe's non-emergent "questionable minor musculoskeletal low back pain."  Lowe continued to request further medical attention, so on February 27, at a "sick call," Lowe saw a nurse who noted his request to add glucosamine to his pain medication.  The following day Nurse Schmitt told Lowe that Dr. Horn had ordered glucosamine to address his pain.  About a week later, when Lowe complained to Nurse Klotzbach of continuing tightness in his back, Dr. Horn also examined Lowe.

Within a few weeks, Lowe appeared to be healing.  On March 20, Lowe told Dr. Horn by letter that despite occasional "tightness" in his back, he was "moving much better" and had improved "all around" as a result of taking the glucosamine in combination with Tylenol.  A month later, Lowe requested a refill of Tylenol and another examination. Dr. Horn did not examine Lowe, but he ordered an X-ray exam and a refill of the Tylenol and glucosamine.  The following month, Lowe told the Health Unit that his mid-back still tightened up occasionally and requested Dr. Horn's attention and additional medication. Lowe also complained to Warden Jenkins that the Health Unit nursing staff was ignoring requests to refill his medication and to see Dr. Horn.  McCreedy, the Health Unit Director, responded that only a doctor could prescribe refills and that his problem was evidently "non-emergent," as reflected by his X-ray and Dr. Kaplan's earlier evaluation.  (Lowe believes that the X-ray technician had administered the X-ray to the wrong area.)  McCreedy also explained that if Lowe's condition changed significantly, Lowe could be seen immediately at sick call.

Over a month later, in late June, Lowe asked the nursing staff at the Health Unit for a new mattress to reduce his back pain. Nurse Klotzbach stated that only a doctor may issue a mattress; Lowe submitted two other requests for mattresses over the next three months, repeating that he needed immediate help for the pain. Nurse Schmitt replied that he could have the pain evaluated at sick call. Rather than attend a sick call then, Lowe responded with multiple requests asking to be seen by Dr. Horn or to receive an MRI exam. The Health Unit staff again explained that he needed to be seen at sick call before scheduling a doctor's appointment and that he could treat the pain with ice and stretching. Despite the advice to attend a sick call, Lowe delayed doing so for several months, until December 30, at which time a nurse found a large knot in his back, but no discoloration or swelling.

The district court granted summary judgment to Dr. Kaplan and Nurses Schmitt and Klotzbach. The court believed that Lowe produced insufficient evidence of a severe medical condition. It also found that none of the defendants had deliberately ignored Lowe's medical needs for the following reasons: (1) Dr. Kaplan took steps to evaluate and resolve Lowe's back pain, (2) Nurse Schmitt suggested remedies for his pain and explained the procedure to see a doctor, and (3) Nurse Klotzbach's denial of Lowe's request for a new mattress complied with legitimate prison policies. *See generally Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006).

On appeal Lowe argues that he supplied sufficient evidence to proceed against all of the defendants. Specifically, he contends that the knot in his back, first observed in December, demonstrates that he had a serious medical need. Further, he contends that the defendants were indifferent to his medical needs before the discovery of the knot as follows: (1) Dr. Horn (dismissed at screening), because he failed to examine Lowe personally and maintained a course of treatment that he knew was not working; (2) the warden and his staff (also dismissed at screening) because they never arranged for an MRI or a proper medical examination despite their knowledge of his pain; (3) Nurse Klotzbach, because he never authorized a new mattress for Lowe; and (4) Nurse Schmitt, because she never referred Lowe to Dr. Horn and recommended treatments that she knew were not working. Lowe's appeal does not raise any challenge to Dr. Kaplan's care.

We review the district court's grant of summary judgment and its dismissal order de novo. *See Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). To survive summary judgment on a claim under the Eighth Amendment alleging medical indifference, Lowe needed to provide enough evidence for a reasonable jury to conclude that prison officials deliberately ignored a serious medical need. *See Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006); *Doughty*, 433 F.3d at 1010. But the Eighth Amendment does not require prison officials to treat him in the exact manner, or at the exact time, that he demands. *See Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Furthermore, mere negligence does not constitute

deliberate indifference.  *See Snyder*, 444 F.3d at 579; *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998).

Even if we assume that Lowe's back condition was serious in December, his claim fails because he produced insufficient evidence that anyone was deliberately indifferent to his condition.  *See Jackson*, 541 F.3d at 698; *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006).  Immediately after Lowe's fall on January 30, the Health Unit staff saw him and told him to treat the injury with a balm, heat and ice, and gentle stretching.  When Lowe complained of continuing pain, the staff had Dr. Kaplan see him within three weeks. Dr. Kaplan examined him, determined that his injury was not an emergency and was "minor," and advised him that Dr. Horn would prescribe pain medication.  Within ten days, Nurse Schmitt saw him again for his pain, and then Dr. Horn, as promised, prescribed pain medication.  After this course of treatment, Lowe reported, in his March 20 letter to Dr. Horn, that this medical care made him feel better "all around" and significantly improved his mobility, even if some occasional tightness lingered in his back.  The absence of further treatment during this period does not constitute deliberate indifference given Dr. Kaplan's diagnosis and Lowe's report that the treatments he received had provided relief.

During the next six months, when Lowe repeatedly asked to see a doctor, the defendants were also not deliberately indifferent to his needs.  The Health Unit consistently told him to attend a sick call, which was required to arrange a doctor's visit, and Lowe does not attack the legitimacy of this procedure.  But Lowe did not attend a sick call until late December.  Likewise, the Health Unit's refusal to issue a new mattress also was not deliberate indifference because staff members told Lowe that only a doctor could order a mattress, again necessitating that Lowe first attend a sick call, which he chose not to do.

Accordingly, the district court properly granted summary judgment.  And because Lowe did not submit any evidence, despite the chance to do so, that *anyone* deliberately ignored his medical condition, the district court committed no reversible error by dismissing at screening Lowe's complaint against Dr. Horn, Jenkins, McCreedy, and the rest of the warden's staff.  *See Patton v. MFS/Sun Life Fin. Distribs. Inc.*, 480 F.3d 478, 484 (7th Cir. 2007); *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006).

AFFIRMED.