Leon SNIPES, Plaintiff–Appellant,

v.

George DETELLA, Doctor Ehrhardt, John L. Russian, et al., Defendants–Appellees.

No. 94–2313.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1996.

Decided Sept. 9, 1996.

Robert J. Palmer, May, Oberfell & Lorber, Anthony Hartmann (argued), and Luka S. Misetic, Law Student (argued), South Bend, IN, for Plaintiff-Appellant.

Jennifer M. Link, Barbara E. Pitts (argued), Office of the Attorney General, Chicago, IL, for Defendants-Appellees.

Before CUMMINGS, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Leon Snipes stubbed his left big toe on a drawer in his prison cell, damaging his toenail. The prison physician treated him promptly, but not to his liking, and while his toenail was healing he may have had to shower in an inch or two of water due to an allegedly faulty drain, making him concerned about infections. Snipes brought suit against the prison warden, the doctor, the chief engineer, and the plumber for violation of the Eighth Amendment. The district court granted summary judgment for defendants. We affirm.

## I.

On January 29, 1993, while still incarcerated at the Danville Correctional Center in Illinois, Leon Snipes filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that prison warden George DeTella, prison doctor Marvin Ehrhardt, Rayland Jackson, chief engineer at Danville, and John L. Russian, the prison plumber, had violated his Eighth Amendment rights and committed medical malpractice. Snipes' factual allegations, in their (unedited) entirety, were as follows:

> On October 9, 1992, I had ripped my big toe nail, on my left foot, partially off, on the sharp metal latch for the drawers that is attached to the bed. My foot was bleeding bad and I was in a lot of pain. I immediately reported this to the wing officers, Officer Snokes and Officer Rosdial and then to Lt. Guy, and I was admitted to the Health Care Unit. I saw the nurse and she then cleaned the wound then I saw the doctor. Doctor Ehrhardt. He decided he wouldn't take the nail completely off at that time. He took a gauze and tape to wrap the wound. (This was on Friday and I was to see him again on Monday October 12, 1992.) He also gave me additional gauzes for the weekend and pain pills (Fenoprofen 600 mg.) and a institutional lay-in for four days, but no ointment or tape to wrap the wound. I had suffered with my foot all weekend long. On Monday October 12, 1992, I again saw Doctor Ehrhardt, he examined my toe and said he would take the nail completely off. He was in the process of doing so when I asked him if he could give me something to deaden the area first. He said "no," and because of the pain I had already suffered, I had asked him again, and again, after that time the doctor said "Forget it I know what I'm doing go back to your unit." Consequently, from that date to this date, October 30, 1992, I have not had any medical attention given to me concerning my foot, leaving my foot vulnerable to any infection, especially in the Receiving unit showers where the drain ring is protrude

one inch above the shower's floor, leaving filthy water standing after each shower. I had filed a institutional grievance on or about October 30, 1992, and to this date November 20, 1992, I have not had any response to the grievance or any medical treatment for my foot. I also spoke with Warden DeTella in hope to have something done consequently I still haven't had medical treatment concerning the aforestated. The cause of action is deliberated indifference and medical malpractice.

For this Snipes requested $600,000 in damages and an investigation into defendants' conduct.

Snipes moved for appointment of counsel on August 26, 1993, but noting that the merits of his complaint were "highly doubtful," the court denied the request. On March 8, 1994, defendants moved for summary judgment. In their statement of undisputed facts they confirmed many of Snipes' allegations but added that Snipes' toe had since healed and that there had never been any problems with infections. Defendants attached a copy of Snipes' medical records indicating that Snipes had missed a third, follow-up appointment with the doctor. Also attached was a photograph purporting to show that the drain in the shower Snipes used was flush with the floor and an affidavit from the chief assistant engineer at the prison stating that the drain had always been flush with the floor, implying there had never been a standing water problem in that shower. Defendants submitted the required cautionary instruction to Snipes in compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), informing him of the time limit for filing a response to the motion and that the district court would accept the assertions in defendants' affidavits as true unless he submitted his own contradictory affidavits or documentary evidence.

Snipes did not file a timely response. On April 26, 1994, the district court granted the motion for summary judgment and entered judgment for defendants. On May 9, 1994, Snipes filed a motion to reinstate his complaint and a response to the motion for summary judgment. He attributed his late response to his sister's failure to mail the documents and noted that the court had granted defendants leave to file their motion for summary judgment after the established deadline. Snipes' response alleged that, contrary to defendants' assertion, no third appointment had ever been scheduled, for if it had he would have been compelled to attend, and that Warden DeTella should have intervened in his medical care. He also said he had sought medical treatment while on parole and had discovered his toe was afflicted with something called "onyx" in which "the nail grew back with a deformed crusty skin between the toe and the nail which elevates the nail ⅜ inch above the toe," making "it hard and painful to wear shoes or stand for any length of time." He claimed an infection caused by inadequate medical treatment had caused the condition. Finally, Snipes alleged that the showers were made flush with the floor only about two weeks before he was paroled. No affidavits or exhibits were attached to his response.

On May 10, 1994, the district court denied the motion to reinstate. The court stated it had considered Snipes' untimely response to the motion for summary judgment but remained "persuaded that the defendants are entitled to judgment as a matter of law." Snipes appeals with the assistance of appointed counsel, raising two issues. First, he contends the court erred in granting summary judgment because "numerous" questions of material fact remain as to whether defendants were deliberately indifferent to his serious medical needs and to harmful prison conditions. Second, he argues the district court improperly denied his request for appointed counsel.

## II.

Snipes' Eighth Amendment contentions are at best a questionable claim for medical malpractice and negligence. Snipes thinks the prison doctor improperly treated his toenail and that prison officials should have provided faster-draining showers. These are not constitutional injuries.

### A.

"[T]he primary concern of the drafters [of the Eighth Amendment's prohibition on 'cruel and unusual punishments'] was to proscribe 'torture[s] and other barbar[ous]' methods of punishment." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting Granucci, *Nor Cruel and Unusual Punishment Inflicted: The Original Meaning*, 57 Calif.L.Rev. 839, 842 (1969)). Nevertheless, recent Supreme Court decisions have held that the Eighth Amendment proscribes more than just "physically barbarous punishments." *Estelle*, 429 U.S. at 102, 97 S.Ct. at 290. "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, ——, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (internal citations and quotation marks omitted). Such "treatment" and "conditions" include a prisoner's medical care, for the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103, 97 S.Ct. at 290.

"[A] prison official violates the Eighth Amendment only when two requirements are met. First the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1977 (internal citations and quotation marks omitted). "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* (internal citations and quotation marks omitted). Thus, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but *only* [to] that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Hudson v. McMillian*, 503 U.S. 1, 19, 112 S.Ct. 995, 1006, 117 L.Ed.2d 156 (1992) (Thomas, J., dissenting).

"[D]eliberate indifference to [the] serious medical needs of prisoners" violates the Eighth Amendment. *Estelle*, 429 U.S. at 104, 97 S.Ct. at 291. The test to determine whether a prison official acted with "deliberate indifference" is a subjective one: "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment [and thus falls outside the Eighth Amendment]." *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1979 (internal citations and quotation marks omitted). To raise an Eighth Amendment issue, "[t]he infliction [of punishment] must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996). Mere negligence or even gross negligence does not constitute deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S.Ct. 2321, 2327–28, 115 L.Ed.2d 271 (1991); *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1991 (Thomas, J., concurring); *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985).

Therefore, the Eighth Amendment is not a vehicle for bringing claims for medical malpractice. *See Estelle*, 429 U.S. at 105, 97 S.Ct. at 291; *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("[T]he courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medi-

cal malpractice statute for prisoners."); *Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir.1996) ("Medical malpractice . . . is not a violation of the [Eighth] Amendment."). Medical decisions that may be characterized as "classic example[s] of matter[s] for medical judgment," *Estelle*, 429 U.S. at 107, 97 S.Ct. at 292–93, such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law.

**B.**

■ Assuming Snipes' tardiness in responding to summary judgment should be excused, and even assuming all Snipes alleged in his complaint is true, his assertion that Dr. Ehrhardt or the Warden was deliberately indifferent to a serious medical need (or that there is a genuine factual dispute about this) does not go far. Snipes has not contested the diagnosis or the chosen treatment. His principal challenge is to the doctor's decision not to administer a local anesthetic before removing his toenail.[1] The argument raises an interesting question: To what extent can one portion or procedure of a "medical treatment" be separated out and subjected to deliberate indifference scrutiny? In other words, is it proper to parse Dr. Ehrhardt's treatment into two discrete actions, (1) the refusal to give anesthetic and (2) the removal of the toenail, or must the entire treatment be viewed as a whole? We think in this case the latter is the correct approach. In Dr. Ehrhardt's medical judgment (and Snipes agrees), the toenail had to be removed. So there is no issue of withholding a needed treatment. Removing a toenail (the treatment) involves a number of minor medical decisions, including whether the procedure merits a local anesthetic. Such decisions are "classic example[s] of matter[s] for medical judgment," *Estelle*, 429 U.S. at 107, 97 S.Ct. at 292–93, and thus are questions

of tort, not constitutional law. What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner. Snipes disagrees with the way that treatment was administered, "but a 'mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference.'" *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir.1991) (quoting *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir.1990)).

Even if Snipes' desire for a local anesthetic could be considered a separable medical need under the Eighth Amendment (which it cannot), the denial of that need was not, "objectively, sufficiently serious" to constitute the "denial of the minimal civilized measure of life's necessities," whatever the doctor's motive might have been. *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1977. A doctor's decision not to anesthetize a toe before removing a partially torn-off toenail—like the decision to remove a big splinter or stitch a cut without anesthetic—is not the type of barbaric treatment the Eighth Amendment was intended to prevent. To the extent such a decision is medically erroneous, it cannot be characterized as disregard for "an *excessive* risk to inmate health or safety." *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1979 (emphasis added). Snipes' health was not put at excessive risk by the extra pain he may have endured. Further, there is no presumption, as Snipes seems to think, in favor of deadening limbs before treating minor injuries. The administration of pain killers requires medical expertise and judgment. Using them entails risks that doctors must consider in light of the benefits. Injecting an anesthetic may involve the risk of nerve damage or some other side effect (*e.g.*, an allergic reaction). Obviously major surgery cannot be performed without appropriate anesthetic. But this was hardly major surgery. It is even possible that an injection of anesthetic would have

1. We say "principal" because Snipes also seems to suggest that the lack of follow-up visits could be the basis for a deliberate indifference claim. The parties disagree about whether a follow-up visit was scheduled, but the dispute is not significant. The district court found that Snipes' injury was not sufficiently serious to support a deliberate indifference claim. Whether or not that was

true before he was treated, it was certainly true after—once the toenail was removed Snipes' injury could no longer be characterized as constitutionally significant. The mere lack of a follow-up visit where the injury was so minor to begin with cannot support a deliberate indifference claim.

hurt more than quickly removing the nail. Nothing Snipes has alleged remotely strikes us as inhumane or a denial of the minimal necessities of a civilized society.

 Snipes disagrees, arguing the matter is an issue of fact for the jury. Quoting language from *Davis v. Jones,* 936 F.2d 971, 972 (7th Cir.1991), he claims a medical condition is serious if it "pose[s] a risk of needless pain." We are not sure what exactly "a risk of needless pain" is, or even if such a notion applies to Eighth Amendment deliberate indifference claims—*Davis* was a due process case. Arguably, all pain beyond what is necessary to keep the mind cognizant of an untreated ailment is "needless." It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd. It would also be absurd to say (as Snipes appears to) that the Constitution requires prison doctors to administer the least painful treatment. That may be preferable, but the Constitution is not a medical code that mandates specific medical treatment. *Davis* did not find deliberate indifference to "needless pain," even though the authorities knew plaintiff was injured but did nothing. The issue there was delay in treatment, not the constitutional threshold of when pain is "needless."

 Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974), *vacated and remanded on other grounds sub nom. Cannon v. Thomas,* 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974). The pain Snipes experienced when his toenail was removed was not

constitutionally serious and there is no evidence the failure to administer an anesthetic aggravated his condition. Snipes' deliberate indifference claim against Dr. Ehrhardt, and thus against Warden DeTella, who had no involvement in. the treatment, is without merit.

### C.

 Snipes also claims prison authorities were deliberately indifferent to a prison condition posing a substantial risk of serious harm, namely, an inch or two of standing water in the shower. Snipes believes the fear and emotional distress he suffered from contemplating the risk of contracting AIDS or some other communicable disease constitutes a cruel and unusual punishment for which even the prison plumber should pay. Snipes does not claim he contracted any such disease and has produced no evidence (and barely asserts) that the dirty shower water caused his onyx condition.

Defendants provided an affidavit stating the shower never had a standing water problem. Snipes says the prison fixed the problem shortly before he was paroled (though he submits no affidavit to that effect). The dispute is unimportant, however. Assuming Snipes' story is true, the fact remains that an inch or two of water in the shower, even where one has a sore toe, is not "an excessive risk to inmate health or safety," *Farmer,* 511 U.S at ——, 114 S.Ct. at 1979, nor the "denial of the minimal civilized measure of life's necessities." *Id.* at ——, 114 S.Ct. at 1977. The shower condition he describes may require extra care on his part to keep the toe clean, but such needed precautions do not ignite a constitutional claim.

### D.

 Finally, Snipes submits the district court abused its discretion when it denied him appointed counsel. It did not. The presence of counsel would not have made a difference in the outcome of this case. Snipes' claim that he was subjected to cruel and unusual punishment by prison officials is a simple claim with little merit. From the beginning this was at best a suit for medical

malpractice and negligence, not a plausible action for violation of constitutional rights. The district court was not unreasonable in denying Snipes appointed counsel. *See Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir.1993) ("We ask not whether [the judge] was right [in denying appointment of counsel], but whether he was reasonable.").

### III.

The decision of the district court is AFFIRMED.

ILANA DIAMOND ROVNER, Circuit Judge, concurring.

Snipes did not reply to defendants' summary judgment motion and, even in his late filing, offered no evidence regarding Dr. Ehrhardt's decision to treat Snipes' toenail without administering anesthetic. Snipes therefore failed to raise a factual question as to either Dr. Ehrhardt's mental state or the propriety of his treatment method. I would leave the matter there and refrain from our own evaluation of medical procedures about which we are without evidence or expertise.