165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles RANDLE, Plaintiff-Appellant,
v.
Dr. Antreas MESROBIAN, Defendant-Appellee.
 No. 98-1590.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 4, 1998.
Decided Aug. 27, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Western Division. No. 95 C 50231, Philip G. Reinhard, Judge.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon. MICHAEL S. KANNE, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Charles Randle, a federal inmate at Dixon, Illinois, alleged in a second amended complaint[1] in this § 1983 civil rights suit[2] that the prison physician, defendant Dr. Antreas Mesrobian, was deliberately indifferent to his medical needs in violation of the cruel and unusual punishments clause of the Eighth Amendment. The district court entered an order granting defendant's motion for summary judgment, and Randle filed a timely appeal.
 
 
 2
 This court reviews a grant of summary judgment de novo. Smith v.. Shawnee Library System, 60 F.3d 317, 320 (7th Cir.1995). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment must establish that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevail, the responding party must then come forward with facts "sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." Id. at 322.
 
 
 3
 The evidence shows that Randle suffered a mild myocardial infarction (MI) on May 9, 1995. Defendant had him transferred to a local hospital and monitored overnight, where his condition remained stable. Back in the prison, ten days later Randle suffered a more severe myocardial infarction on May 19, 1995, requiring transfer to a local emergency room, where the cardiologist on duty ordered immediate air transport to a hospital in Rockford, Illinois. A surgical procedure then revealed a 90-percent blockage of a main artery.
 
 
 4
 Randle claims that defendant's failure to consult with, or refer him to, a cardiologist during the ten days between the first and second MIs constituted deliberate indifference to his medical needs. An Eighth Amendment claim alleging inadequate medical care by prison personnel must meet both the subjective and objective components of the relevant test, by establishing that prison officials were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The parties do not dispute the seriousness of Randle's medical condition. They focus instead on the subjective element of the test, which requires the inmate to establish the defendant's deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 839-40, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
 
 
 5
 Mere negligence in diagnosis or treatment, or proof of medical malpractice without more, does not rise to the level of deliberate indifference. See, e.g., Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir.1996) ("[T]he courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners."). Instead, to be "deliberately indifferent," a state of mind derived from criminal recklessness, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 839-40. "Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law." Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir.1996) (internal citation omitted). As we have previously explained, "the Constitution is not a medical code that mandates specific medical treatment." Snipes, 95 F.3d at 592. An inmate does not establish deliberate indifference by claiming he wanted a specific treatment and foolproof guarantee against further disease or medical trauma. See Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir.1997). The Eighth Amendment does not provide such guarantees.
 
 
 6
 The medical records clearly show that defendant did not simply ignore Randle. In fact, Randle received continuous medical treatment by defendant and his staff. After the initial, mild myocardial infarction, defendant immediately transferred Randle to a local hospital where he was monitored overnight. His condition was stable, and there was no indication of further cardiac incidents. Following the initial hospitalization, defendant kept Randle in the infirmary for five days, monitoring his symptoms 24-hours a day, despite Randle's repeated insistence that he felt fine and wished to return to his cell. Even when defendant discharged Randle from the infirmary, returning him to the general population, he was given heart medications (e.g., aspirin, beta-blocker Tenori, nitroglycerin, blood pressure medicine), "plans for daily blood pressure checks, a 'lay-in' for three weeks, and a follow-up physician appointment in one week." Four days later, when Randle began experiencing acute chest pain and shortness of breath at 2:20 a.m., defendant (from home) immediately ordered an EKG, and then directed that Randle be taken to the hospital. Randle may disagree with the failure to immediately refer him to a specialist, but this falls short of establishing deliberate indifference to a serious medical need. Given the strict standards of Farmer, 511 U.S. at 839-40, and Estelle, 429 U.S. at 107, we hold that the district court properly granted summary judgment to Dr. Mesrobian.
 
 
 7
 Randle relies heavily on an affidavit by the cardiologist who performed the angiogram, Dr. Ashoka Nautiyal, who opined that the earlier tests performed at the local hospital by defendant after the first myocardial infarction revealed muscle damage and ischemia (lack of blood flow to the heart) in the same area of the heart (LAD, that is, left anterior descending artery) which caused the second MI ten days later. Dr. Nautiyal stated in his affidavit that he believed that Randle "should have been immediately referred to a cardiologist for consultation [which] might or could have prevented the second [MI] on May 19, 1995." Dr. Nautiyal opined that after the May 9th MI, Randle was "at an increased risk to progress to a major [MI]"[3] Dr. Nautiyal also noted in his affidavit that his review of the May 9-10 hospital records indicated that Randle "did not receive a cardiologist consultation at KSB Hospital."
 
 
 8
 At most, Dr. Nautiyal offers an opinion that defendant was negligent. With the benefit of hindsight, perhaps defendant would have chosen a quicker referral to a specialist. Nonetheless, there is simply no evidence in the record indicating that defendant was subjectively indifferent to Randle's medical needs. Moreover, even after Randle received exactly the medical care he accuses defendant of failing to provide--care by a cardiologist--he still suffered a third MI several months later. This is not a case where the doctor deliberately chose not to furnish the inmate with medical treatment. Even if defendant committed malpractice (and we do not find that he did), "malpractice just isn't enough." Steele v. Choi, 82 F.3d 175 (7th Cir.1996). See also Dulany v. Carnahan, 132 F.3d 1234 (8th Cir.1997) ("[S]howing that another physician might have ordered different tests and treatment does not show deliberate indifference.").
 
 
 9
 Prisons are not required to keep specialists on staff, and inmates have no automatic right to consult with outside physicians. See Roberts v. Spalding, 783 F.2d 867 870 (9th Cir.1986) ("A prison inmate has no independent constitutional right to outside medical care"); Green v. McKaskle, 788 F.2d 1116 (5th Cir.1986) ("Furthermore, the mere claim that he was not afforded a doctor who specialized in the treatment of paraplegia or a trained physical therapist does not, of itself, state a claim of deliberate indifference."). Moreover, general practitioners, like all physicians, have received basic training in treating cardiac problems. At most the record shows negligence when defendant did not more quickly consult a cardiologist. See Hathaway v. Coughlin, 37 F.3d 63, 68 (2d Cir.1994) ("We decline to adopt a rule that in effect would exempt general practitioners from being found deliberately indifferent to a patient's serious medical needs as long as the general practitioner at some point refers the patient to a specialist, regardless of the extent of contact at general practitioner has with the patient.").
 
 
 10
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The original complaint was filed pro se. The court later appointed counsel, who filed a first amendment complaint. Counsel was subsequently permitted to withdraw. The district court appointed another attorney, who then filed the second amended complaint
 
 
 [2]
 The Prison Litigation Reform Act does not apply, since the case was initially filed on August 30, 1995
 
 
 [3]
 In response to Randle's submission of Dr. Nautiyal's affidavit, defendant relied on the affidavit of Dr. Harry Shuman, Medical Director of the Illinois Department of Corrections, who both summarized the medical records, and offered the medical opinion that defendant's medical care of Randle was proper. However, the district court properly struck the portion of the Shuman affidavit giving a medical opinion, since defendant had failed to timely disclose Shuman as an expert witness. (R.66, p. 7)