David ESTRADA, Petitioner,

v.

James REED, M.D., Michael Carr, HSA, Virginia Jones, HSA, Mr. Hobart, Warden, and A. Salas, Captain, Respondents.

No. 07–C–442–C.

United States District Court, W.D. Wisconsin.

Sept. 14, 2007.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for Respondents.

## OPINION and ORDER

CRABB, District Judge.

This is a proposed civil action for monetary relief, brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). At times relevant to this case, petitioner David Estrada was confined at the Federal

Correctional Institution in Oxford, Wisconsin. Petitioner contends that respondents James Reed, Michael Carr, Virginia Jones, Mr. Hobart and A. Salas were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

Now before the court is petitioner's request for leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915. Petitioner has made the initial partial payment of the filing fee required to be paid under the Prison Litigation Reform Act. Pursuant to the act, petitioner's complaint requires screening. 28 U.S.C. § 1915(e)(2).

▮ In performing that screening, the court must construe the complaint liberally. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, it must dismiss the complaint if, even under a liberal construction, it is legally frivolous or malicious, fails to state a claim upon which relief may be granted or seeks money damages from a defendant who is immune from such relief.

In his complaint and materials referenced in the complaint, petitioner alleges the following facts.

## ALLEGATIONS OF FACT

### A. *Parties*

Petitioner David Estrada is a prisoner who is presently incarcerated at the U.S. Medical Center in Springfield, Missouri. At times relevant to this case, he was confined at the Federal Correctional Institution in Oxford, Wisconsin.

At times relevant to this complaint, respondents Reed, Carr, Jones, Hobart and Salas worked at the Federal Correctional Institution in Oxford, Wisconsin. Respondent Hobart was the warden. Respondent Reed was a doctor and the clinical director. Respondents Jones and Carr were health services administrators. Respondent Salas was a captain.

### B. *Petitioner's Medical Care*

On April 30, 2005, while he was housed at the Federal Correctional Institution in Oxford, Wisconsin, petitioner suffered a stroke and was sent by ambulance, first to Divine Savior Health Care in Portage, Wisconsin and then to the University of Wisconsin hospital in Madison, Wisconsin. As a result of his stroke, petitioner lost his ability to walk and use his left-side arm or leg. His speech was somewhat impaired and he was unable to swallow food or drinks comfortably without coughing and choking. Petitioner received evaluation and treatment at the University of Wisconsin hospital until May 6, when he was transported to the Mound View Memorial Hospital and Clinic in Adams County, Wisconsin. Between May 9 and 26, petitioner received physical and occupational therapy twice daily at the Mound View facility. These sessions went well. However, petitioner experienced limited improvements in his motor skills in his arm and hand.

On May 26, 2005, petitioner was moved back to the Federal Correctional Institution in Oxford. When petitioner first arrived, he was informed that a room was being prepared for him in the prison hospital. Before petitioner was taken to his room, he met with respondent Reed, who told petitioner that "it's been decided that [petitioner] could best be served and monitored if [he] were placed in the Special Housing Unit of the institution." The Special Housing Unit is known as "The Hole" and is used generally as a "punitive environment" that keeps prisoners "locked-down" at all times.

Petitioner objected to placement in the Special Housing Unit. However, he was moved there and placed in an available cell. At respondents Hobart's and Salas's orders, petitioner's wheelchair and three-

pronged walking stick were taken from him, leaving petitioner "virtually ... bed-bounded." Prison officials did not give petitioner his prescribed medications or check his vital signs on May 26.

On May 27, petitioner spoke with respondent Salas at 10 a.m. and informed him that he had not received his medications and that other staff members had not responded to his complaints about feeling ill. Respondent Salas told petitioner that he would call the medical staff about petitioner's concerns. Petitioner was able to speak also with respondent Hobart about his placement in the Special Housing Unit. Respondent Hobart assured petitioner that the placement was temporary and that he would be moved to the prison hospital as soon as a room was available.

At 2:30 p.m., medical staff finally responded and spoke with an officer in the Special Housing Unit about petitioner's medication. They told the officer that the medications were being filled, but did not respond to petitioner's complaints about feeling ill. Petitioner did not receive his medications until 10:00 p.m. that evening. The nurse who delivered petitioner's medications was not aware of his earlier complaints about feeling ill and being in pain and did not check petitioner's vital signs.

Petitioner was not seen by medical staff on May 28, 2005. At approximately 9:30 a.m., petitioner complained to a medical staff member about his constant headaches and pain, and the fact that he had not had his vital signs checked since he had returned to the institution. At 10:30 p.m., petitioner was given Tylenol for his headache but his vital signs were not checked. At approximately 7 a.m. on May 30 and 31, 2005, petitioner received Tylenol for his headache and had his vital signs checked by a medical staff member. He also received Tylenol at 10:00 p.m. on May 30.

On May 31, 2005, petitioner was taken to Mound View Memorial Hospital and Clinic

for continuing physical therapy sessions. The therapy staff at the clinic was concerned that petitioner's speech had changed since his last session, signs of drooling had increased, he had developed a constant cough and his blood pressure had "once again become a serious issue." Petitioner's doctor was notified that his blood pressure was elevated. The doctor requested a change in petitioner's medication and closer monitoring of petitioner's condition. "Therapy staff" requested also that petitioner be provided with a table and chair so that he could perform his therapeutic exercises in his cell. This request was denied by respondent Salas.

When petitioner returned to the institution on May 31, he did not receive the new medications and his vital signs were not checked until the next evening, at approximately 8 p.m. On June 2, 2005, petitioner returned to Mound View Memorial Hospital and Clinic for another physical therapy appointment. His blood pressure was very high and his doctor again asked that his vital signs be checked more regularly. In spite of this request, petitioner's vital signs were not checked after he returned from his appointment that day. Also on June 2, petitioner sent respondent Jones a request related to the "almost non-existent monitoring of his vitals." She did not respond.

On June 3, 2005, a prison official asked petitioner whether he would like to be moved into the general population area. A hospital room had not been made available to him. Petitioner did not have any therapy sessions between June 3 and 14.

On June 7, petitioner submitted another request to respondent Jones, in which he asked why he had not yet been "submitted" for a transfer to the Medical Center. Another prison official told petitioner's family member that she "hadn't yet seen a

medical transfer packet pertaining to [petitioner's] case."

On June 9, petitioner had an appointment at the University of Wisconsin hospital, at which he was told that his physical therapy should continue and that he would benefit from speech therapy three times a week. Petitioner never received speech therapy. On June 13, petitioner took his first dose of a new pain medication that respondent Reed prescribed to him. On June 15, he had a therapy session at Mound View Memorial Hospital and Clinic, at which clinic staff expressed concern about petitioner's trouble with his speech. On June 16, petitioner told respondent Reed that he was concerned about taking the new pain medication and respondent Reed suggested that he take a lower dose.

Petitioner attended therapy sessions on June 17, 21, 22, 23 and 28th. At the session on June 17, clinical staff suggested that petitioner would benefit from speech therapy. At the session on June 21, clinical staff recommended that petitioner would benefit from using a therapeutic vibrator. Respondent Reed rejected this recommendation.

On June 30, 2005, petitioner was transported to the Federal Medical Center in Rochester, Minnesota. While there he usually received weekly therapy sessions.

Petitioner was moved back to the Federal Correctional Institution in Oxford, Wisconsin on February 1, 2006. On February 2, petitioner met with respondent Reed and asked whether he would receive additional therapy. Respondent Reed said that he didn't understand why petitioner had been returned to the institution if he still needed therapy. He then asked petitioner about his other medical needs. When petitioner mentioned that he had ongoing jock itch, respondent Reed told him that they would deal with the jock-itch first and then consider therapy. Between February and April 2006, petitioner tried all of the over-the-counter remedies for his jock itch. None resolved the problem. He finally received prescription medication in early May 2006, which appeared to control the jock itch.

Petitioner met with a psychologist in late May or early June of 2006 for the purpose of determining whether he should be treated for hepatitis-C. The psychologist's evaluation was never submitted for plaintiff to receive treatment. Petitioner asked respondents Reed and Carr about this, but "nothing was ever done concerning this matter."

When petitioner met next with respondent Reed, Reed told him that he would be scheduled for an evaluation with a therapist. On June 22, 2006, petitioner met with a therapist, who recommended that he have physical therapy sessions twice a week at Divine Savior Hospital. She recommended also that petitioner be evaluated by an occupational therapist to develop a plan to address problems with his left hand and upper extremities. Neither of these recommendations was implemented.

In August 2006, petitioner filed a request for an administrative remedy and asked to be transferred to a facility that could properly treat his medical needs. When petitioner met with respondent Reed on September 4, 2006, Reed acknowledged that he had not begun to prepare the paperwork necessary for such a transfer. On September 5, 2006, petitioner received a response to his administrative remedy request, which stated that "Based on the outside physical therapist consultation, and the Clinical Director and the Health Services Administrator have submitted a request for your transfer to a Federal Medical Center." Petitioner then submitted a request for an "expediative" transfer. On December 19, 2006, petitioner received a notification that he had been approved for a medical transfer. Howev-

er, there was no mention of a expedited transfer.

On January 3, 2007, petitioner asked respondent Reed for a new splint for his left finger. The splint helped to prevent his finger from hyperextending as a result of his stroke. Going without a split caused petitioner excruciating pain. Respondent Reed did not respond to this request in any way. Petitioner also brought this issue to respondent Carr's attention during sick call. Petitioner did not receive a splint.

On January 5, 2007, petitioner met with respondent Reed to discuss the results of an x-ray of petitioner's foot that had been taken on December 19, 2006. Respondent Reed told petitioner that the results were still pending. On January 8, petitioner sent a request to respondents Reed and Carr, and another prison staff member, "expressing [his] concerns about [his] worsening condition and the pain and discomfort he was continually experiencing." He did not receive a response. When petitioner attempted to meet with respondent Reed on January 12, 2007, he was told by another staff member that respondent Reed was too busy to meet with him, that petitioner was being placed on "medically unassigned" status for a year and that he should not "worry about" the results of his x-rays.

Petitioner was transferred to the Federal Medical Center in Springfield, Missouri on January 17, 2007.

## DISCUSSION

### A. *Eighth Amendment Claims*

The Eighth Amendment to the United States Constitution requires the government " 'to provide medical care for those whom it is punishing by incarceration.' " *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). To prevail ultimately on a claim under the Eighth Amendment, a prisoner must prove that prison officials engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285.

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder,* 444 F.3d 579, 584–85 (7th Cir.2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it causes pain, *Cooper v. Casey,* 97 F.3d 914, 916–17 (7th Cir.1996), or if otherwise subjects the detainee to a substantial risk of serious harm, *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures. *Forbes v. Edgar,* 112 F.3d 262, 266 (7th Cir.1997).

Thus, under this standard, petitioner's claim is analyzed in three parts:

(1) Whether petitioner had a serious health care need;

(2) Whether respondents knew that petitioner needed care; and

(3) Despite their awareness of the need, whether respondents failed to take reasonable measures to provide the necessary care.

Petitioner does not have to allege the facts necessary to establish each of these elements at the pleading stage, but they provide the framework for determining whether petitioner has alleged enough to give respondents notice of his claims. *Kolupa v. Roselle Park District,* 438 F.3d 713, 715 (7th Cir.2006); *Doe v. Smith,* 429 F.3d 706, 708 (7th Cir.2005).

■ It is difficult to discern which of petitioner's many health problems he would like the court to consider in the context of this case. In his chronological statement of facts he provides information about everything from his stroke to hepatitis C to jock itch. However, it appears from the "memorandum of law" that petitioner submitted with his complaint that he is concerned primarily with his placement in the Special Housing Unit without a wheelchair or walking aid, the failure of medical staff to monitor his blood pressure consistently after doctors recommended such monitoring and the failure of medical staff to provide him with proper medication and therapy following his stroke. If left untreated, high blood pressure may cause serious health problems. In addition, petitioner asserts that he suffered from a serious stroke, which left him with limited ability to use much of his left side and difficulty speaking. Several medical professionals concluded that petitioner required consistent therapy to regain his motor skills following the stroke. Therefore, both petitioner's high blood pressure and medical needs following his stroke could constitute serious medical needs. The remaining question is whether it is possible to infer that any the named respondents were deliberately indifferent to these needs.

### 1. *Respondent Hobart*

Petitioner describes two incidents regarding respondent Hobart's interactions with him. First, approximately one month after petitioner had his stroke, he was returned to the Federal Correctional Institution in Oxford, Wisconsin, where he was placed in the Special Housing Unit, not the prison hospital. Petitioner complained to respondent Hobart about this placement, and respondent Hobart assured petitioner that his placement was temporary and that he would be moved to the hospital area when a room was available. Petitioner had been told earlier that a room was available and being readied for him. Petitioner was never moved to a prison hospital room. Second, respondent Hobart directed that petitioner's walking stick and wheelchair be taken from him while he was in the Special Housing Unit, which left petitioner virtually bed-ridden for nine days.

■ Nothing about respondent Hobart's statement that petitioner's placement in the Special Housing Unit was temporary, or the fact that petitioner was not moved to the prison hospital after speaking to Hobart suggests that Hobart was deliberately indifferent to petitioner's need for medical care following his stroke. Deliberate indifference requires that a prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). There is no indication that petitioner received less care in the Special Housing Unit than he would have anywhere else in the prison. It is not possible to infer that being placed there instead of the hospital unit placed petitioner at a substantial risk of serious harm. Therefore, petitioner has not stated an Eighth Amendment claim against respondent Hobart on this ground.

■ However, petitioner's claim that respondent Hobart was deliberately indifferent when he prohibited petitioner from having access to his wheelchair and walking stick, which petitioner needed to move about, fares better. The Court of Appeals for the Seventh Circuit has held that denying a prisoner adaptive equipment may amount to deliberate indifference. *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991) (prisoner stated claim by alleging "prison officials had denied him access to his

crutches and leg brace"). Therefore, at this early stage, petitioner has stated a claim against respondent Hobart on this ground.

### 2. Respondent Jones

Petitioner's allegations with respect to respondent Jones are that she failed to respond to a complaint petitioner filed about the medical staff's failure to monitor his vital signs and that she did not respond to petitioner's request for information about why he had not yet been "submitted" for transfer to a medical center. Petitioner's first allegation states a claim against respondent Jones, but barely. Petitioner's doctor outside the prison recommended on several occasions that it was important that petitioner's vital signs be monitored regularly. If petitioner's complaint to respondent Jones included information about his medical needs and informed her about the lack of monitoring, he could have an Eighth Amendment claim against her. *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir.2003) (prison official liable if he knew about violation and facilitated it, approved it, condoned it or turned a blind eye for fear of what he might see). However, even viewing the facts in the light most favorable to petitioner, as I must at this early stage, it is not possible to infer that respondent Jones's failure to explain why petitioner had not been submitted for transfer amounted to deliberate indifference of a serious health need.

### 3. Respondent Salas

Respondent Salas, along with respondent Hobart, ordered that petitioner's wheelchair and three-pronged walking stick be taken from him. As discussed above, denying a prisoner adaptive equipment may indicate deliberate indifference to the prisoner's serious medical needs. Petitioner will be granted leave to proceed against respondent Salas on this ground.

Next, petitioner alleges that respondent Salas denied the request of petitioner's outside therapeutic staff that petitioner be allowed a table and chair in his cell, at which he could continue his physical therapy. If respondent Salas knew that petitioner's physical therapy was necessary to restore his ability to move about, his refusal to allow petitioner to have necessary materials for his physical therapy might amount to deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005) (state of mind consistent with deliberate indifference shown when prison official is "aware of and disregard a substantial risk to the inmate's health."). Petitioner will be granted leave to proceed against respondent Salas on this ground as well.

However, petitioner's final allegation regarding respondent Salas does not suggest deliberate indifference. On May 27, petitioner spoke with respondent Salas to inform him that he hadn't received his medications and that other staff members had not responded to petitioner's complaints about feeling ill. Respondent Salas told petitioner that he would call the medical staff about petitioner's concerns, but petitioner did not receive his medication until much later that day. At most, this suggests that respondent Salas was negligent in failing to follow up to insure that petitioner received the care he requested. Negligence does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06, 97 S.Ct. 285.

### 4. Respondent Carr

Petitioner alleges that he needed a splint for one of his fingers to prevent it from hyper-extending, a condition he describes as excruciatingly painful. He further asserts that he brought this issue to respondent Carr's attention during sick call, but that respondent Carr did not

provide him with a splint. Given petitioner's assertion that hyper-extension of his finger was excruciatingly painful and that medical staff at another institution believed that it was necessary to provide him with treatment for it, it is possible that this could constitute a serious medical need. Petitioner alleges that respondent Carr knew about petitioner's need for a new splint and did nothing about it. At this early stage in the lawsuit, this is sufficient to state a claim against respondent Carr.

 Petitioner alleges as well that he told respondent Carr that a psychologist's assessment had not been submitted, a step necessary for petitioner to receive treatment for his hepatitis C. Although hepatitis C may well constitute a serious medical need, it is not possible to infer that respondent Carr was deliberately indifferent petitioner's need for treatment from the bare fact that petitioner asked respondent Carr about the psychological evaluation and that nothing happened afterward.

5. *Respondent Reed*

a. General allegations regarding respondent Reed's care

 From petitioner's allegations, it appears that respondent Reed was the physician at the Federal Correctional Institution primarily responsible for petitioner's care. One of petitioner's primary concerns raised in this lawsuit is that he did not receive consistent monitoring of his vital signs and medication following his stroke. In a *Bivens* action, as in an action under 42 U.S.C. § 1983, supervisors cannot be held liable under the doctrine of respondeat superior. *Lojuk v. Quandt,* 706 F.2d 1456 (7th Cir.1983). However, they may be "liable for the conduct of their subordinates if they were personally involved in that conduct." *Del Raine v. Williford,* 32 F.3d 1024, 1052 (7th Cir.1994) (Ripple, J. and Manion, J., concurring),

citing *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). It is possible to infer reasonably that because respondent Reed was petitioner's primary physician at the prison, he was involved in directing petitioner's care and therefore involved in some manner in determining whether petitioner required daily monitoring of his vital signs and consistent receipt of effective medication. The actual extent of respondent Reed's involvement will be determined at a later time. Therefore, I will grant petitioner leave to proceed against respondent Reed on this claim. However, petitioner should be aware that, to prevail ultimately on this claim, he will need to show that respondent Reed was actually aware that he was not receiving regular monitoring of his vital signs or appropriate doses of his medications and that Reed failed to take reasonable steps to insure that petitioner received appropriate care.

Next, petitioner describes numerous interactions he had with respondent Reed. It is not clear whether petitioner intends to assert claims related to each incident or if he provides the details solely as background information. However, reading petitioner's complaint generously, it is possible that he intended to assert additional, independent claims against respondent Reed. I will consider each in turn.

b. Limited therapy

 Petitioner asserts that respondent Reed failed to approve him for physical and speech therapy. In particular, petitioner alleges that respondent Reed rejected a recommendation by clinical staff that petitioner use a therapeutic vibrator for speech therapy purposes and that after petitioner returned to the Oxford Correctional Institution on February 2, 2006, respondent Reed required petitioner to resolve his jock-itch problem before he would consider providing petitioner with addi-

tional physical therapy. Also, petitioner alleges that Reed did not follow up in June 2006 on a therapist's recommendations that petitioner receive physical therapy twice weekly and that he be evaluated by an occupational therapist.

From petitioner's allegations, it appears that respondent Reed was aware, at a minimum, that other medical professionals believed that petitioner needed additional therapy to help him recover fully from his stroke. In spite of this, Reed failed to take steps to insure that petitioner received the recommended therapy, and delayed petitioner's access to therapy after he returned to the institution from the Federal Medical Center in Rochester, Minnesota. At this early stage, I will grant petitioner leave to proceed on his claim that respondent Reed denied him access to appropriate therapy following his stroke. However, to prevail ultimately, petitioner will need to demonstrate that the therapy he received was inadequate, that respondent Reed knew it was inadequate and refused to take reasonable steps to insure that petitioner receive adequate care.

c. Allegations regarding respondent Reed and other respondents

I have already discussed three of petitioner's claims against respondent Reed in the context of petitioner's claims against other respondents. First, petitioner states that respondent Reed told him that he would be placed in the Special Housing Unit, even though petitioner had been told previously that he would have a room in the prison hospital. As discussed above with respect to a similar claim against respondent Hobart, petitioner's placement in the Special Housing Unit rather than the prison hospital, even if directed by respondent Reed, does not suggest that Reed was deliberately indifferent to petitioner's serious medical needs.

Second, petitioner alleges that he needed a splint for one of his fingers to prevent it from hyper-extending, a condition he describes as excruciatingly painful. He further asserts that he told respondents Reed and Carr about this need, but that neither provided him with a splint. Again, given petitioner's assertion that hyper-extension of his finger was excruciatingly painful and that medical staff at another institution believed that it was necessary to provide him with treatment for it, it is possible that this could constitute a serious medical need. Petitioner alleges that respondent Reed knew about his need for a new splint and did nothing about it. At this early stage in the lawsuit, this is sufficient to state a claim against respondent Reed.

Third, petitioner alleges that he told respondents Reed and Carr that a psychologist's assessment had not been submitted, a step necessary for petitioner to receive treatment for his hepatitis C. Although hepatitis C may well constitute a serious medical need, it is not possible to infer that respondent Reed was deliberately indifferent to petitioner's need for treatment from the bare fact that petitioner asked respondent Reed about the psychological evaluation and that nothing happened afterward.

d. Additional allegations that fail to state Eighth Amendment claims

 Petitioner alleges that in June 2005, respondent Reed prescribed him a new pain medication. When petitioner expressed concern about taking the medication, respondent Reed suggested that petitioner take a lower dose. Also, he alleges that respondent Reed did not prepare paperwork for a transfer in a timely manner or insure that petitioner's request for an expedited transfer was honored. Petitioner alleges he experienced pain and discomfort in his foot in December 2006

and January 2007, that an x-ray was performed on December 19, 2006, and that when petitioner met with respondent Reed on January 5, 2007, Reed told petitioner that the results were still pending. Respondent Reed did not respond to petitioner's complaint on January 8 that his foot was causing him discomfort and when petitioner tried to meet with respondent Reed on January 12, 2007, he was told by another staff member that respondent Reed was too busy to meet with him. Finally, petitioner alleges he was moved out of the Federal Correctional Institution in Oxford on January 17, 2007. Under no circumstances would any of these actions give rise to an Eighth Amendment claim against respondent Reed.

## ORDER

IT IS ORDERED that

1. Petitioner David Estrada is GRANTED leave to proceed *in forma pauperis* on the following Eighth Amendment claims:

- that respondents Warden Hobart and A. Salas exhibited deliberate indifference to petitioner's serious medical needs when they denied petitioner adaptive aids when he was placed in the Special Housing Unit at the Federal Correctional Institution in Oxford, Wisconsin;

- that respondent Virginia Jones exhibited deliberate indifference to petitioner's serious medical needs when she failed to take reasonable steps to insure that petitioner received appropriate monitoring of his vital signs and medication after he submitted a complaint to her;

- that respondent Salas exhibited deliberate indifference to petitioner's serious medical needs when he denied the recommendation of petitioner's doctor that he needed a table and chair in his cell for rehabilitative purposes;

- that respondents Michael Carr and James Reed exhibited deliberate indifference to petitioner's serious medical need when they denied him a splint to prevent painful hyperextention of his finger; and

- that respondent Reed exhibited deliberate indifference to petitioner's serious medical needs when he failed to take reasonable steps to insure that petitioner received appropriate monitoring of his vital signs, medication and therapy to help him recover from his stroke.

2. Petitioner is DENIED leave to proceed *in forma pauperis* on all other claims.

3. For the remainder of this lawsuit, petitioner must send the United States Attorney for the Western District of Wisconsin a copy of every paper or document that he files with the court. Once petitioner has learned what lawyer or lawyers in the United States Attorney's office will be representing respondents, he should serve the lawyer directly rather than the United States Attorney. The court will disregard any documents submitted by petitioner unless petitioner shows on the court's copy that he has sent a copy to the United States Attorney or to the lawyer assigned to represent respondents.

4. Petitioner should keep a copy of all documents for his own files. If petitioner does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

5. The unpaid balance of petitioner's filing fee is $319.50; petitioner is obligated to pay this amount in monthly payments as described in 28 U.S.C. § 1915(b)(2).

6. Copies of petitioner's complaint and this order are being sent today to the

United States Marshal for service on respondents.