**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 30, 2018[*]
Decided July 31, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-3528

| | |
|---|---|
| ROBERT P. HUDSON, | Appeal from the United States |
|     *Plaintiff-Appellant,* | District Court for the Northern District |
| | of Indiana, South Bend Division. |
|     *v.* | |
| | No. 3:14-cv-456 JD |
| ANDREW LIAW and KEVIN KREMBS, | |
|     *Defendants-Appellees.* | Jon E. DeGuilio, |
| | *Judge.* |

**O R D E R**

Robert Hudson, a former prisoner at Westville Correctional Facility, appeals the entry of summary judgment against him on his claims that two prison doctors violated the Eighth Amendment by their deliberate indifference to his ongoing pain. Because the record compels the conclusion that the doctors adequately treated him, we affirm.

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

The events leading up to Hudson's suit began on September 20, 2012, when ceiling tiles fell on Hudson while he was in the shower. The collision aggravated Hudson's chronic back pain, and he was transported to a hospital emergency room to treat his head and back pain and numbness in his legs. After reviewing a CT scan (which showed normal results), a hospital doctor diagnosed Hudson with mild strains in his neck and lower back. Hudson received an injection of a nonsteroidal anti-inflammatory medicine and then returned to the prison the same day as the shower incident.

Upon his return to prison, Hudson met Dr. Andrew Liaw, one of the defendants, for further medical attention. Dr. Liaw prescribed 500 milligrams of naproxen twice daily. He also prescribed a "lay-in" pass for three days. This pass excused Hudson from prison work so that he could get more bed rest, but it did not entitle him to in-cell delivery of food. Dr. Liaw also gave Hudson a bottom-bunk pass for a week.

Five days after seeing Dr. Liaw, Hudson met with Dr. Kevin Krembs, the second defendant. Hudson reported that his left shoulder and lower back still ached, but Dr. Krembs decided that no further pain medicine was needed. He observed that the recent CT scan was normal, and he thought that Hudson "seemed to overreact to fairly minimal palpation." After watching Hudson walk easily from the waiting room to the exam room and ably climb on the exam table, Dr. Krembs concluded that Hudson had "no gross dysfunction in any of his movements or his limbs." Later that night, though, Hudson complained to a prison nurse about enhanced pain. The nurse called Dr. Krembs at home, and in response to this new complaint, Dr. Krembs ordered injections of a pain reliever and a steroid (which acted like an anti-inflammatory). He also ordered a bottom-bunk pass for another week, and a lay-in pass for another three days so Hudson could avoid work.

Two days after the two injections and the not-yet-completed three days of bed rest, Hudson sought out Dr. Krembs again. (Dr. Krembs denies that this second meeting took place, and no record of it exists. But because we are reviewing the record at summary judgment, we accept Hudson's version. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).) Hudson states that he went to Dr. Krembs to report that his back pain had "worsened three-fold" and he had throbbing migraines. Dr. Krembs did not prescribe any new medicine; instead he advised Hudson to "man up."

The next event relevant to this appeal occurred a year later. Hudson complained to a nurse about back pain and swelling and pain in his knees. The nurse reported these complaints and Hudson's vital signs to Dr. Liaw, who ordered a steroid injection as an anti-inflammatory. He also prescribed another three-day lay-in pass. Hudson says that he remained in bed continuously, not leaving his cell even to get food.

This suit under 42 U.S.C § 1983 came next. With the aid of recruited counsel, Hudson pursued claims that Dr. Krembs was deliberately indifferent to his pain during the two visits that occurred just days after the shower incident. He also asserted that Dr. Krembs, and a year later Dr. Liaw, were deliberately indifferent when they gave him a three-day lay-in pass to avoid work but did not provide him with in-cell food delivery. After discovery the judge granted the doctors' motion for summary judgment. Dr. Krembs, the judge ruled, reasonably treated Hudson during the day of the first visit; and after learning of worsening pain at night, he reasonably increased Hudson's pain medicine. The judge ruled that the record lacked sufficient evidence that Dr. Krembs was deliberately indifferent to Hudson's pain during the disputed second visit. Finally, the judge rejected Hudson's claim that Dr. Krembs, and a year later Dr. Liaw, recklessly gave him three-day lay-in passes but no in-cell food delivery; no evidence suggested that the doctors knew that Hudson could not walk to get food.

On appeal Hudson repeats that Dr. Krembs was deliberately indifferent to his pain when evaluating Hudson during their first visit after the shower incident. Hudson contends that Dr. Krembs should have ordered stronger medication, physical therapy, and treatment by a specialist. We defer to medical professionals who reasonably exercise their medical judgment unless "no minimally competent professional would have so responded under [the] circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). Dr. Krembs reasonably exercised medical judgment in evaluating Hudson and declining to order more treatment. He watched Hudson capably walk into the exam room, climb onto the table, and then "overreact" to touch. After observing Hudson's mobility and seeing that Hudson's normal CT scan revealed no objective evidence of pain, Dr. Krembs reasonably decided that the 500 milligrams of naproxen twice a day (already prescribed by Dr. Liaw) was sufficient. Although Hudson disagrees with this reasonable course of pain medication, such a disagreement cannot form the basis of a deliberate-indifference claim. *See Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Hudson's claim of Dr. Krembs's deliberate indifference is further refuted by the events later that evening. After a nurse called Dr. Krembs at night to report that

Hudson was experiencing greater pain, the doctor *did* change his course of treatment. Dr. Krembs ordered two pain-relieving injections, a low-bunk pass, and a lay-in pass. In the context of the entire day, no reasonable jury could find that Dr. Krembs's treatment was deliberately indifferent to Hudson's pain.

That brings us to Hudson's assertion that when he saw Dr. Krembs two days later, Dr. Krembs was deliberately indifferent to his pain. Hudson asserts that when he reported that his pain had tripled, the doctor just sneered and said "man up." Even taking Hudson's (contested) assertion at face value, no rational jury could find deliberate indifference. Dr. Krembs knew that Hudson had received three pain relievers (naproxen and two injections), lower bunk privileges, and three days of prescribed rest two days earlier. When Hudson reported further pain within that not-yet-completed three days of rest, Dr. Krembs reasonably required him to allow a modest time to pass to see if the medication and bed rest were effective. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.").

We turn to Hudson's final claim. He challenges Dr. Krembs's decision shortly after the shower incident, and Dr. Liaw's decision one year later, to order three-day lay-in passes (excusing Hudson from prison work) but without in-cell delivery of food. Hudson says the passes left him with the choice of remaining in his cell continuously for three days and not eating, or further injuring his back by walking from his cell to eat. (He implies that he chose not to eat for three days.) But no evidence suggests that either doctor knew that Hudson's pain incapacitated him from walking to a meal. They knew only that he had some back pain and pain and swelling in his knees. Hudson did not say (or show them) that he could not walk; to the contrary, the record shows that he walked in the presence of Dr. Krembs. Without evidence of the doctors' knowledge that Hudson was in pain that kept him from walking, Hudson cannot prove that they acted with deliberate indifference when they prescribed a three-day lay-in pass but no in-cell food delivery. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016).

We have considered Hudson's other arguments and none merits discussion. Therefore, we AFFIRM the district court's judgment, and Hudson's pending "Motion to Make Settlement Offer" is DENIED AS MOOT.